RAILWAY COMPANY *v.* COX.

Opinion delivered January 5, 1895.

*Carrier—Injury to passenger—Contributory negligence.*

In an action by a passenger against a railroad company to recover for personal injuries, it appeared that plaintiff, on arriving at his destination in the night time, was temporarily detained by a freight train standing between his train and the depot, and that, on attempting to go around the freight train, he fell into a cattle gap, with the location of which he was acquainted, and was injured. *Held*, that, in the absence of any apparent necessity for him to go by that route, or of any invitation or inducement by the railway company to do so, he was guilty of such contributory negligence as would preclude a recovery, and this is true whether the night was dark or not.

Appeal from Jackson Circuit Court.

JAMES W. BUTLER, Judge.

STATEMENT BY THE COURT.

This is a suit by appellee against appellant company on a claim of damages to the person of plaintiff, in the sum of $5000, and was tried by a jury, and determined in the Jackson circuit court, at its spring term, 1893, resulting in verdict and judgment against appellant in the sum of $800, from which it duly appealed to this court.

Abstract of the Evidence.

On the night of the second of June, 1892, at about 8 o'clock, the plaintiff arrived at Tuckerman from Swifton (both in said Jackson county), on defendant's passenger train, as a regular passenger thereon, having paid his fare as such. There were three railroad tracks of defendant's road at Tuckerman, which was one of defendant's regular stations. The western one, nearest the depot building, was called the "passing track"; the middle one, the "main track," whereon passenger trains, having the right of way, ran; and the eastern one used

for freight trains.    The road of defendant was fenced in by a wire fence, on either side, generally along the outer edge of right of way.    The fence, on the west side at this point, seems to have extended from each end of the depot building north and south along the right of way.    About 30 or 40 yards from the depot building in one direction, a public highway crossed defendant's railroad, and, as is necessarily the case in such instances, the fence on either side of defendant's road was drawn in towards and to the same at the side of the public road ; and in defendant's road bed, between the two ends of the fence thus drawn in to it, was a stock gap— a .pit covered with small square sleepers, with a few inches space between them, and in this instance having one of the corners uppermost, so as to prevent stock from walking over it, and thus intruding upon defendant's road and right of way.

Passengers, alighting from defendant's trains, had to go by. way of the passway, through or around the depot building, in order to go to the town of Tuckerman, nearby.    Whether or not the tracks of the railroad were on a level with the ground at the point where passengers disembarked, and where the plaintiff got off on the occasion referred to, is not stated ; and yet we infer as much, for in his complaint and in his testimony he states that the steps of the coach were two or three feet from the ground.

There was a freight train standing on the "passing track" (the one nearest the depot) when the passenger train arrived and stopped opposite the depot, and plaintiff alighted ; and the way to the depot house from the passenger coaches was thus obstructed, so that at the time the plaintiff could not reach the depot, without going over or under this standing freight train.

When plaintiff alighted from the train, he met and had some conversation with friends who were getting on

the train, and saw there also the conductor or depot man on the ground with a lantern, and probably other train men.    All these and plaintiff were in the space between the freight and passenger trains, which was about five or six feet wide.    One of plaintiff's witnesses testified : "As I got on the passenger train, the freight train was moving out north ; there I met plaintiff.    He left, and started south between the tracks.    That was the only way he could get out unless he waited until the freight train passed by.    Plaintiff was from forty to sixty feet from cattle gap when I met him."    Plaintiff states that there was no light at the depot, or, if there was one, its rays were obstructed by the standing freight train, so that he did not have the benefit of it.    The testimony is conflicting as to whether it was a moonlight or dark night, plaintiff stating that it was dark, his witnesses not remembering as to this, and the railroad men stating that the moon was shining.

    The plaintiff testified that he was well acquainted with the surroundings, and knew of and where the cattle gap was.    He states that he was a farmer, and at the time a candidate for clerk of that county, and was actively looking after his canvass ; and, on alighting from the train, was anxious to get to the town (Tuckerman), and "be with the boys."    And so, after a few words of greeting with his friends, and seeing the freight train standing in the way, he went up the track to the cattle gap to get into the public road, and, in crossing over the gap, his heel caught against one of the corners of the sleepers, and his toe went down between them, and he fell and sprained his ankle.    With some difficulty he reached the town, by the help of others, called in a surgeon, and suffered a great deal, and was entirely or practically helpless for some time, and claims that he is permanently injured.

*Dodge & Johnson* for appellant.

1.  The facts in this case establish a clear case of contributory negligence.

2.  The facts are entirely different from those in 46 Ark. 182, and plaintiff's first prayer should not have been given. The second and third were not applicable to this case, and were misleading.

3.  When a passenger *has knowledge* of a dangerous place, and the place is not intended for the use of passengers, and the passenger *knows it*, yet uses such place as a passageway, and is injured, he cannot recover. Wood, Mast. & Ser. sec. 335 ; 53 Hun, 420 ; 102 N. Y. 219 ; 11 Cent. Rep. 206 ; 137 Pa. St. 352 ; 39 Fed. 596 ; 57 Conn. 422.

4.  A passenger's right to recover is precluded when his omission to employ his senses contributes to his injury, if by their employment he might have avoided the injury. 35 O. St. 631 ; 24 *id.* 638 ; 25 Mich. 274 ; 40 Ark. 322 ; 58 Fed. 341.

5.  When a railroad company has provided safe and convenient means for passengers to enter and leave trains, etc., the means so provided must be used, and if he uses a way of his own choice in preference, he is responsible for any accident which may happen. 33 Pa. St. 318 ; 97 Mass. 275 ; 50 How. Pr. 126 ; 103 Mass. 570 ; 6 C. B. (N. S.) 923.

*M. M. Stuckey* for appellee.

1.  The route taken by plaintiff was the one used by the public to get to town when a freight train was obstructing the passage to the depot. This case is in direct line with 46 Ark. 182.

2.  Railroad companies are bound to provide passengers a safe passage to and from trains. 69 Md. 449 ; 84 N. Y. 241. Also to give proper directions therefor. 43

Iowa, 276; 10 Mo. App. 31. Neither of these was done in this case.

3. Plaintiff's instructions are sustained by 46 Ark. 182 and 37 *id.* 522.

4. It is the duty of railroad companies to keep their depot grounds properly lighted. 32 Wis. 524; 48 Vt. 101; 56 Me. 234; 34 La. An. 777; 44 Am. Rep. 444.

5. The sixth instruction of defendant was properly refused. Whittaker's Smith, Neg. 314, 315. The route taken was the only one open to plaintiff; it was the custom of passengers to use it, which custom was permitted and acquiesced in by the company. By failing to cut its freight train, it forced plaintiff to take the only route open to him.

BUNN, C. J. (after stating the facts). It is a duty which railroad companies owe to their passengers, and others having business, to keep the way of ingress and egress to and from their stations, to points of embarkation and debarkation in and from their trains, open and free from obstructions. This, of course, means that the way shall not be unnecessarily obstructed, nor obstructed for an unreasonable time, even when necessarily obstructed. While such is the obligation of a railroad company in any case, there is also a reciprocal duty devolving upon its passengers, and that reciprocal duty of the passenger is to use ordinary care in protecting himself from danger and avoiding dangerous localities, and that he should act in all things as a reasonable man might be expected to do under similar circumstances. *Little Rock, etc. R. Co.* v. *Cavenesse*, 48 Ark. 106.

The plaintiff was placed in no position of peril whatever by the obstructing train. That train was *stationary* on the siding track, as it perhaps should have been if, under the circumstances, it was properly on that track at all. The complaint that it was not "cut in two,"

so as to leave a passageway between the parts, as was said by witnesses to have been usually the case in like situations and circumstances, is merely a reiteration of the charge of negligence in obstructing the passage which it was the duty of the appellant to have kept open ; and, besides, that circumstance, of itself, might have gone to show merely the extreme shortness of the time it was expected to remain.     We cannot say as to this, however. The plaintiff was present, and is shown to have been a person of fair intelligence, and the law imposes upon him the duty of being reasonable.

The negligence charged was in obstructing the way between the point where plaintiff got off the train and the depot house.     The result of that obstruction was the temporary detention and doubtless annoyance to plaintiff, and the subsequent injury, as he alleges.     In response to this, the defendant charges contributory negligence on the part of the plaintiff, and that the same was the proximate cause of his injury.     We think the defendant's charge is sustained by plaintiff's own testimony, and that he makes out a clear case of contributory negligence against himself, there being no apparent necessity for him to go by the route he did, and there being nothing to show that defendant had acted in any way or done anything to invite or induce persons to go that way.     In other words, we do not see, as plaintiffs counsel see, the application of the principle announced in the case of *Texas etc. R. Co.* v. *Orr*, 46 Ark. 182, to the facts in this case.

The charges that defendant stopped its passenger train so that the plaintiff was compelled to step two or three feet from the steps of the coach to the ground, and that the locality was not sufficiently lighted, seem to have been abandoned in argument, probably because neither seems to have had anything to do with the injury complained of.     If the night was dark, or there was no

light to aid him, as testified by the plaintiff, with the knowledge he had of the location of the cattle gap, he was negligent in attempting to pass over it. If, on the other hand, it was a moonlight night, as testified by defendant's witnesses, there does not appear any good reason why he should have received the hurt if in the exercise of ordinary care.

Reversed and remanded.