MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. D. W. LIGHT ET AL.

Decided March 18, 1909.

**1.—Carrier—Live-stock—Damages—Charge.**

An instruction in an action for negligent injury to horses and mules in their transportation by rail is held erroneous in its application to evidence here considered, in assuming that if the animals were "skinned, bruised or injured," their market value was necessarily depreciated thereby.

**2.—Charge—Damages.**

A carrier transporting live-stock is liable only for such depreciation in the value of the animals by their transportation as has been caused by its negligence. Charge considered and held erroneous for failing to so limit the damages recoverable.

**3.—Carrier—Damages to Live-stock.**

Evidence in an action for damages to live-stock in transportation considered and held insufficient to support a recovery for the amount awarded.

**4.—Misconduct of Jury.**

Proof that the jury arrived at the amount of damages awarded by dividing the aggregate of their estimates by twelve and adopting the result, held insufficient to constitute a ground for reversal, but to demand close scrutiny of the evidence on which their finding was made to rest.

Error to the District Court of Denton County. Tried below before Hon. Clement B. Potter.

*Garnett & Eldridge,* for appellant.

*Walker & Mays, Herbert R. Wilson* and *Orus O. Ross,* for appellee.
—On the fifth and sixth paragraphs of the charge: St. Louis S. W.
Ry. Co. of Texas v. Casseday, 92 Texas, 525; International & G. N.
Ry. Co. v. Hays, 44 Texas Civ. App., 462; St. Louis & S. F. Ry.
Co. v. McClain, 80 Texas, 85; Galveston, H. & S. A. Ry. Co. v.
Karrer, 70 S. W., 328; Texas & P. Ry. Co. v. Coggin, 99 S. W., 431;
Martin v. Missouri P. Ry. Co., 5 Texas Civ. App., 135; Missouri, K.
& T. Ry. Co. v. Cannady, 36 Texas Civ. App., 646; Missouri, K. & T.
Ry. Co. of Texas v. Storey, 75 S. W., 847; Kirby Lumber Co. v.
Dickerson, 42 Texas Civ. App., 504; Industrial Lumber Co. v. Bivens,
47 Texas Civ. App., 396.

The verdict was not excessive and was fully supported by the evidence. Gulf, C. & S. F. Ry. Co. v. McCarty, 82 Texas, 608; Gulf,
C. & S. F. v. Porter, 61 S. W., 343; Texas & N. O. Ry. Co. v. Ludtke,
3 Texas Civ. App., 308.

The jury arrived at their verdict in the proper manner. Hanley v.
Leigh, 8 Texas, 130; State ex rel. Senter v. Cowell, 102 S. W., 573.

HODGES, Associate Justice.—The appellees owned twenty-eight
head of horses and mules in Denton County, which, in December, 1906,
were shipped over the appellant's line of road to San Antonio, and
thence over the I. & G. N. to Cotulla. The stock were loaded into a
car at Pilot Point on Wednesday, and reached their destination on
the following Monday night. This suit is to recover damages for
delay, rough handling and failure to properly water and feed the
stock while in transit over the appellant's line. Upon the trial before
a jury the plaintiffs in the case recovered a judgment for $533.

The testimony shows that the distance from Pilot Point to Cotulla
is about 400 miles; that the shipment over the appellant's line was to
San Antonio and thence over the I. & G. N. R. R., the latter distance
being about 100 miles. There was testimony on the part of the appellees tending to show delays, rough handling and injuries to the
stock, but upon these issues the evidence was conflicting. There was
also a conflict in the evidence as to the condition in which the stock
arrived at Cotulla. On the part of the appellees the testimony was
that they were gaunt, drawn, skinned and bruised, and some of them
were lame; while witnesses for the appellant say that the stock were
not injured in any way; that they were not bruised or skinned, and
were in as good condition as could be expected after having been transported that distance. It is claimed that the stock were shipped for
the purpose of being sold at the point of destination, and most of them
had been sold prior to the time of the trial. Upon the issue of injury
to the market value of the stock D. W. Light, one of the appellees,
was the only witness who testified in the court below. His testimony
upon that issue is as follows: "If these stock had reached Cotulla
in the condition and at the time they should have reached there, their
market value would have been about $130 per head. The market value
of said stock at the time and in the condition they did arrive there,
was $90 per head. The difference per head in the condition and at
the time they should have reached Cotulla, and the condition and
time when they did reach Cotulla, was $40 per head." There was

1909.] MISSOURI, K. & T. RY. CO. OF TEXAS v. LIGHT. 483

other testimony offered by appellant to the effect that the market value of the entire lot upon their arrival at Cotulla was much above $90 per head. The evidence also shows that before the stock arrived, and while at Granger in transit, four of the mules were sold by the man in charge for $625; that the next day after their arrival four others were sold for $550; that within a short time four other mules and two horses were sold for an aggregate of $815; that some time thereafter—just how long is not stated—two other mules were sold for $265, and still later five mules were sold at an average of from $250 to $275 per span. There were six mules and three horses on hand at the time the witness whose deposition was taken, testified. We are not advised as to when this was. Several of the mules remaining unsold were being held for $275 per pair, an offer of $265 per pair having been refused. As to the condition of the remainder of the stock the testimony does not disclose anything further than as given by the witness D. W. Light, above referred to.

The first error assigned complains of the following portion of the court's charge: "If you believe from the evidence that during the transportation of said horses and mules, and while they were in charge of the defendant, the defendant was guilty of negligence in the manner of handling or switching the car in which said horses and mules were; and if on account thereof said horses and mules were skinned, bruised or injured, then you will find for the plaintiffs on this item of their claim." The objection to this is that it assumes as a conclusive fact that if the animals were "skinned, bruised or injured" they necessarily suffered in their market value, and therefore the charge is on the weight of the evidence. In view of the peculiar facts of this case, we think the charge is subject to the objection urged. There was testimony on the part of the appellees that all of the stock were more or less skinned, bruised and injured, without specifying in detail any of the injuries except as to three of the animals. D. W. Light, one of the plaintiffs in the case, testified that the damages from those injuries amounted to $40 per head. The undisputed evidence further shows that some of the stock were sold within a very short time after their arrival, at prices in excess of what Light testified would be their market value had they arrived in proper condition. This, it seems, would afford conclusive evidence that some of the stock, at least, were not "skinned, bruised or injured" sufficiently to affect their market value. We think the court should have left it to the jury to determine whether or not the injuries were sufficient to affect the market value of the stock.

It is also claimed that the court erred in giving the following charge on the measure of damages: "If you find for the plaintiffs you will assess their damages at such sum as in your judgment from the evidence is the difference between the market value of said horses and mules in the condition in which they arrived at Cotulla and the market value of said horses and mules in the condition in which they should have arrived in Cotulla." The specific objection to this portion of the charge is that "it makes the appellant absolutely liable for the difference between the market value of the stock in the condition in which they arrived at Cotulla and that in which they

should have arrived;" whereas, the appellant can only be held liable for such difference as may have been caused by its negligence. We think the proposition stated by the appellant correctly gives the rule in such cases; and if by a fair construction of the language used in the charge it fails to conform to that requirement, it should not have been given. The court uses the language "in the condition in which they *should* have arrived," without any qualification. This apparently implies that there was a dereliction of duty somewhere which caused an injury. Had the court supplied the ellipsis by adding "but for the negligence of the appellant," still another objection, equally as grave, would have arisen. The charge might then be said to have been upon the weight of the evidence. Yet, clearly, we think such was the only inference to be drawn from the language used. If we construe the language as having reference to a condition of the stock brought about by any and all of the circumstances attending that shipment which resulted in their delay or injury, then the charge seeks to make the appellant responsible for more than the law will justify. The charge should have been so framed as to submit the measure of damages in a manner authorizing a recovery for such injuries as resulted from the negligence of the appellant or of its servants.

Appellant further complains that the verdict is excessive and is not supported by the evidence. There is also an assignment charging misconduct on the part of the jury in the manner in which they arrived at their verdict. Upon this latter question the court heard testimony which showed that the jury reached their verdict in the following manner: After they had retired for the purpose of deliberation, and without having discussed the evidence, in pursuance of a suggestion, each juror wrote upon a slip of paper the amount of damages he thought the plaintiffs were entitled to recover. These were added together and the sum divided by twelve, resulting in 533 as the quotient. They accordingly returned $533 as their verdict in the case. The testimony further showed that the various sums written by the jurors ranged from $300 to $888. There is some doubt, from the evidence adduced, as to whether this method of finding the verdict was in compliance with a previously formed agreement, or that the result was afterwards agreed to by all the members of the jury; and we are unable to say that the verdict was arrived at in such a way as to justify the court in setting it aside on that account alone. But be that as it may, these facts are suggestive of such an absence of that deliberation which should characterize the conduct of juries when passing upon the property rights of litigants, as to subject to close scrutiny the evidence upon which their finding is made to rest. Under the testimony we think the jury might justifiably have concluded that the stock in question were injured by long confinement and the manner in which they were handled while in transit; and if it was also found that some of the injuries inflicted were caused by the negligence of the appellant's employes, it can not be said that such finding would be without evidence to support it. But it is difficult to understand how a satisfactory conclusion could be reached as to how much damages should be awarded.

There were twenty-six horses and mules in the car when they ar-

rived at Cotulla, two mules having been sold on the way by the man in charge. One of the appellees testified that some of the stock were skinned, bruised and injured when they arrived, while others say that all of them were in that condition. How much of this condition was due to the negligence of the appellant's servants, and how much resulted incidentally and necessarily from being transported that distance in a railway car, is purely a matter of conjecture under the evidence. Two of the witnesses for plaintiffs below testified to specific injuries to three of the animals, but did not undertake to say what was the amount of damages resulting from those particular injuries. D. W. Light, one of the appellees, says that the stock would have been worth in that market $130 per head had they arrived in proper condition; that they were worth only $90 per head in the condition in which they did arrive; and thus places $40 per head as a general average of the damages sustained. There was nothing to enable the jury to assess the damages to any one or more of the animals at a greater or less amount than the average named by Light. The correctness of his estimate is so strongly challenged by his subsequent admissions, and those of his coplaintiffs, that its probative value as a basis for a verdict may be seriously questioned. It is admitted that a very short time after the stock arrived at Cotulla eight head of them were sold for $1100, or $7.50 per head more than Light estimated their market value would have been had they arrived in good condition, and $47.50 more than he stated their market value actually was upon their arrival. There is nothing in the evidence to show that the animals sold were injured less than the others, or that their market value was greater at that time. The average of those sold thereafter was also above the value fixed by Light. It was also admitted that four of the mules which were unsold at the time the deposition of the witness was taken were held at $275 per pair. This would leave only five head whose value were unaccounted for; thus showing by the evidence that twenty-one of the animals had been erroneously estimated by Light to have been damaged to the extent of $40 per head. Could the jury say that these five were each damaged to the extent of over $100, as they must in order to sustain their finding? We think not. It is true some of these animals were priced some time after their arrival at their destination, and appellees contend that these values should not be taken as a basis of measuring their damages. We think that is true, and are not undertaking to use it for that purpose, but we refer to it simply to show how unreliable and inadequate was the testimony upon which the jury had to rely in estimating the damages in the case. There was nothing to show that the market value of the stock had changed during the time intervening between their arrival and when the animals were subsequently sold, or that any expense was incurred to get them in a better marketable condition. The evidence merely shows that they were turned into a large pasture and were kept there until sold.

We think that the verdict is excessive, and for that reason, among the others discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*