WEATHERFORD, M. W. & N. W. RY. CO. v. THOMAS. (No. 8114.)†

(Court of Civil Appeals of Texas. Ft. Worth. March 6, 1915. Rehearing Denied April 10, 1915.)

1. CARRIERS ☞347 — PERSONAL INJURIES — PERSONS IN CHARGE OF LIVE STOCK—CONTRIBUTORY NEGLIGENCE—CROSSING TRAIN.

It had long been defendant's custom to stop its train at a certain water tank, near a junction with a line of a connecting carrier, for a sufficient length of time to enable drovers, in charge of stock shipments, to look after their stock and get their contracts for transportation on the connecting line signed at the station. In going to the station the drovers habitually and with the knowledge and acquiescence of defendant passed across the train between the cars over the drawheads thereof. Plaintiff, in charge of a stock shipment and riding on a drover's pass, was injured while so crossing by being caught between the drawheads through a sudden movement of the train. Held, that plaintiff was not guilty of contributory negligence as a matter of law, notwithstanding that he might safely have passed around either the front or rear of the train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. ☞347.]

2. NEGLIGENCE ☞136—QUESTIONS OF FACT—INTERFERENCES FROM EVIDENCE.

Negligence is generally a question of fact, and becomes a question of law for the court only when the act done is the violation of some law, or when the facts are undisputed and admit of but one interference.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ☞136.]

3. APPEAL AND ERROR ☞1170 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for injuries to a drover while crossing over the drawheads of a stock train standing at a water tank, the admission of evidence that he was married and had a family was harmless error, in view of rule 62a (149 S. W. x), providing that no judgment shall be reversed on appeal for error of law, unless causing the rendition of an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. ☞1170.]

4. DAMAGES ☞132—PERSONAL INJURIES.

A judgment of $9,964 was not excessive where plaintiff, a drover, whose foot was crushed between the drawbars of defendant's train, was 30 years old, with a life expectancy of 35 years, and whose earning capacity of from $4,500 to $5,500 a year, as a cattleman, had been impaired one-half.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ☞132.]

5. CARRIERS ☞348—INJURY TO STOCKMAN—INSTRUCTIONS.

An instruction, in an action for injuries in being caught between stock cars suddenly moved, held not to submit the issue of discovered peril.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1405; Dec. Dig. ☞348.]

6. APPEAL AND ERROR ☞273 — PRESERVING EXCEPTIONS—STATEMENTS OF GROUNDS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, provides that rulings on instructions shall be regarded as approved unless excepted to, which provision is made part of the chapter relating to bills of exceptions. Article 2059 provides that no particular form of wording shall be required in the bill of exceptions. A bill of exceptions made no specific objection to an instruction given, but merely stated that defendant "in open court excepted, and here now excepts." Held, that the objection made was too general, since it did not show whether the issue had not been alleged, or whether there was no evidence authorizing its submission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590, 1606, 1620–1623, 1625–1630, 1764; Dec. Dig. ☞273.]

7. APPEAL AND ERROR ☞1056 — HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The refusal of the trial court to permit the introduction of contradictory testimony is harmless error, where the contradiction offered is upon an immaterial matter.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ☞1056.]

8. TRIAL ☞41—RECEPTION OF EVIDENCE—REFUSAL TO PERMIT WITNESSES TO TESTIFY.

There was no abuse of discretion in refusing to permit a witness to testify after he had been released from the rule on the ground that he would not be used as a witness.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 101–105; Dec. Dig. ☞41.]

9. TRIAL ☞315—MISCONDUCT OF JURORS—DETERMINATION OR AMOUNT OF VERDICT BY LOT.

Where a jury determined the amount of its verdict by having each member thereof write down the amount he was willing to allow, adding the separate accounts together and dividing the sum by 12, making the result its verdict, in the absence of an agreement beforehand to abide by such result, the discretion of the trial court in refusing to set the verdict aside would not be interfered with, under Vernon's Sayles' Ann. Civ. St. 1914, art. 2021, relating to granting of new trial for misconduct of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 740–742; Dec. Dig. ☞315.]

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by Frank Thomas against the Weatherford, Mineral Wells & Northwestern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

H. C. Shropshire, of Weatherford, for appellant. Hood & Shadle, of Weatherford, for appellee.

CONNER, C. J. Appellant presents this case in the following statement, which we adopt, viz.:

"This is a suit brought by Frank Thomas, plaintiff below, against the Weatherford, Mineral Wells & Northwestern Railway Company, defendant below, to recover damages for al-

leged personal injuries claimed to have been sustained by Frank Thomas, on or about the 22d day of September, A. D. 1913, in Weatherford, Tex., in the yards and near the roundhouse of appellant, while he was attempting to pass through appellant's train and in going over and across said train of cars by going over and across the drawheads while said train was standing and the engine attached thereto was taking water at the water tank of said company near its roundhouse in Weatherford, Tex.

"Among other things, appellee alleged that on or about the 22d day of September he was shipping three cars of cattle on cars of appellant from Salesville to Ft. Worth, Tex., over the lines of appellant to Weatherford, and thence over the lines of the Texas & Pacific Railway Company to Ft. Worth; that he accompanied said cattle on said train and cars with the knowledge and consent of appellant, its agents, servants, and employés, and traveled on what is commonly called a drover's pass; that long before this time he had been continually shipping cattle and live stock over appellant's road from, through, and to said points for years, and in each instance accompanied said shipment of cattle and live stock as in this instance; that at, and long before, this time it had been the unvarying custom and practice of appellant to stop its train and cars before reaching its depot at Weatherford, Tex., at or near a spur or switch, to take on water and hold the train and cars there for some time; that when this would be done the unvarying custom and practice for the shipper, and those assisting him, was to get out of the caboose on the north side of said train and track, look after their cattle, and cross over the cars, going through and over the drawheads to the south side of the train and cars, and then go to the depot at said Weatherford and get their papers and contracts signed up so that there might be no delay; that up to the 22d day of September, 1913, this had been done for years, and was the custom and practice of all shippers on said road, and the same was then and there well known to appellant, its agents, servants, and employés, and said custom and practice had been continually in vogue all these years with the knowledge, consent, and acquiescence of appellant company, its agents, servants, and employés, and appellant had never, so far as appellee knows, made any objection to same, and the agents, servants, and employés of appellant, in the necessary discharge of their duties with said company, had customarily themselves gone down the north side of said trains and cars of cattle and crossed over the drawheads between the cars while said train and cars were standing still at said place taking water, and that they had done this in the presence of appellee and others, and had seen appellee and others do so a great number of times, and said appellant, its agents, servants, and employés knew at and before said time that at said time and place, when said train would stop to take on water, appellee would get out and look after his cattle, walking down on the north side of said train of cars and then cross over at the place where they customarily crossed over, going over and across the drawheads, between the cars of said train, to the south side of same, so that he could go to the depot and get his papers and contract signed up; that theretofore said train had always stood still at said place for a considerable length of time, and ample time for one to get out of the caboose and walk down on the north side of said trains and look after the cattle and cross over by going over and across the drawheads to the south side; that all this was known to appellee at said time, and relied upon by him, and was then and there well known to appellant, its agents, servants, and employés; that appellee at said time knew of no rule of said company against one's going over and across said train and cars by going over and across the drawheads while said train was standing still at said place and times and in such way and manner; that to cross over and through said cars at said time and place, by going over and across the drawheads when said train was standing still, was not dangerous; that at the time alleged herein, and long before this time, and continuously on up to this time, it had been the unvarying custom and practice of appellant company, its agents, servants, and employés at said place, before its train and engine would be moved, after having been stopped, as aforesaid, to take water, to notify the shipper or shippers and those in charge of the cattle and live stock, and to give a warning or signal of its intention to move, all of which was known to the appellee at and before said time, and was relied upon by him, and all of which at and before said time was well known by appellant company, its agents, servants, and employés; that at said time and place appellee, relying on said unvarying custom and practice of appellant company, its agents, servants, and employés, and relying upon the actions and statements of appellant, its agents, servants, and employés, and relying upon the said unvarying custom and practice of appellant company, its agents, servants, and employés to give a signal or warning before moving, or attempting to move or start, said engine or train, when said train and cars had reached said place and stopped to take water, got out of said caboose at the proper place and time and in the usual and customary way, and walked down to the point where he and others had crossed over the train and cars by going through and over the drawheads to the south side of same, and within the period of time said train usually stood still at said place, crossed and attempted to cross over on the south side of said cars, so that he could go and get his contracts signed up; that while appellee was in the act of crossing over the drawheads between the cars as he had usually done before, as above stated, and while he was thus on the drawheads and crossing in the usual way and manner of other drovers at said place when shipping cattle and live stock over said road when said train would be stopped to take water at said place, appellant, by agents, servants, and employés, without any character of notice to appellee, or without any character of warning, and before the train had stood at said place the usual and customary length of time, and before appellee had time to get out of the caboose and walk down and cross over the cars at said place to the south side, as had been his usual custom, started and backed said engine and cars with much force, and appellee's right foot was caught between the drawheads and cars and machinery and horribly mashed, crushed, and mangled all to pieces, rendering an amputation of same necessary, etc.; that appellant, its agents, servants, and employés were guilty of negligence in starting and moving said cars in the way and manner and at the time they started and moved said engine and cars, and in not warning or giving appellee notice before they started said engine, cars, and train, and said negligence was the direct and proximate cause of appellee's great injuries and damages.

"That long before this occurrence, as alleged above, and continuously up to and at said time, appellee had been engaged in shipping cattle and live stock over appellant's road; that up to said time it had been the custom and practice to run said cars to the point west of the depot of the Texas & Pacific Railway Company at Weatherford, Tex., and stop said train and cars to take water, and, while taking water at said time and place, for the shipper to alight on the north side of the train and look after his cattle and see if they were all up, and prod them up, if necessary, and that in doing this they often had to stand on the drawheads, all of which was known at the time to appellant, its agents, servants, and employés, and then cross

over to the south side by going over and across the drawheads between the cars so that the shipper could then go to the depot and get his contract signed up; that the agents, servants, and employés of appellant, in the discharge of their duties in and about said train and cars, had customarily, at said time and place, crossed over from the north side of said cars to the south side, by going over the drawheads at said place, when said train was standing still, and had done same in the presence of appellee and others; that said trains of appellant had always before stopped at said place long enough for the shipper to get out and look after his cattle and then cross over at said place between the cars, by going over, across the drawheads; that on said September 22, 1913, appellee was, as before alleged, a passenger on the freight train of appellant, riding on a drover's pass; and on said occasion, before said train reached Weatherford, Tex., and while in transit from Mineral Wells to Weatherford, Tex., the conductor in charge of said train told appellee and others in his presence that the train would stop at the place where it usually did before running into Weatherford, Tex., to take water and that it would be and stand there for some time, and that for him (appellee) to get out and look after his cattle and go across the train and cars, as he usually did, to the south side and get his contracts signed up, telling appellee, and others in his presence, that they would have plenty of time to do so, as the train would be stopped there for some time; that appellee relied upon this statement of the conductor; that on said occasion when said train reached the switch or spur before reaching the place to take on water, the caboose was cut loose and side-tracked, and the rest of the train ran down and stopped at the usual place to take water; and that appellee, relying upon the statements of said conductor, as aforesaid, and as was his custom and practice, and the custom and practice of appellant, its agents, servants, and employés, got out of the caboose on the north side of same, and walked down the north side of the train of cars, looking at and after his cattle, until he reached the point where he, and the other shippers, customarily crossed over to the south side, and, said train at said time being still, appellee attempted to cross over said train and cars to the south side for the purpose of getting his papers and contracts signed up, by attempting to go over and across the drawheads; that at said time, while said train was standing still, to cross over again as he had attempted to do was not dangerous; that appellee at the time was relying upon the aforesaid custom and practice of appellant in remaining there a certain length of time, and relying upon the statements aforesaid of said conductor that he would have time to do this, and relying upon the custom and practice of appellant company to give some notice or warning before starting said train; and while appellee was so attempting to cross over said train as aforesaid, appellant, its agents, servants, and employés, without any warning or notice to appellee, and without permitting said train to stand still the usual length of time, violently started and moved said engine, train, and cars back, thereby causing the cars, drawheads, and machinery to catch the right foot of appellee, and horribly mash, etc.; that right at the time and just before starting said engine, train, and cars, the engineer could see, and did see, appellee and his position between said cars and knew and must have known of his position, and of the great danger of starting said engine, train, and cars while appellee was in said position, and of the great danger of starting said engine, train, and cars while appellee was in such position without notifying appellee, or giving some warning of his intention to start said train; that said engineer gave no notice or warning whatever; that the engineer, by starting said engine, train, and cars, at the time he did

in the way and manner he did, and without giving any notice or warning, and knowing, as he must have known, and seeing appellee's position, was guilty of gross negligence which was the proximate cause and direct cause of appellee's great injuries, etc., describing his injuries.

"Appellant answered by general and special exceptions, general denial, and special pleas of contributory negligence, and other matters, etc.

"The case was tried before a jury on the 27th day of April, A. D. 1914, and there was a verdict and judgment for appellee for the sum of $9,964, together with 6 per cent. interest per annum thereon from said 28th day of April, A. D. 1914. Appellant in due time moved the court for a new trial, which motion was overruled, to which action and ruling of the court appellant at the time excepted, and in open court gave notice of appeal to this court."

[1] Without undertaking to set out the evidence, it may be stated, in general terms, that the testimony supports the allegations of the appellee's petition as heretofore stated, except that there was no evidence directly showing that appellant's locomotive engineer or fireman actually saw appellee at the time that he attempted to cross between the cars. Such a conclusion could be reached only, if at all, as an inference from evidence merely showing that they could have so seen him had an effort been made to do so. It should also be stated that it further appeared that appellee, instead of crossing between the cars, as he did, might have gone either to the front or rear of the train, and thus crossed the track in safety. There was nothing to prevent him doing this. In order to do so, he would have only had to go two car lengths and the length of the engine to have crossed in front, and it was but little farther to go around the rear of the train. It does not appear, however, that either at the rear or at the front of the train there was any well-defined or prepared crossing of the tracks that was in use for that purpose, the evidence tending to show that the path generally used by shippers and others in going from one side of the track to the other led up to the track at about the point where appellee in fact crossed.

With the foregoing statements in mind, the most difficult question perhaps presented on this appeal is whether appellee was guilty of contributory negligence as a matter of law. If so, the court should have given the peremptory instruction requested by appellant, or at least have set aside the verdict of the jury as prayed for in the motion for new trial. Appellant's insistence is that a person is guilty of negligence as a matter of law who attempts to crawl through cars in a train which obstructs his further progress when he knows that an engine with steam up is attached to the train and is liable to start at any moment, citing in support of this contention the following cases: Rodriguez v. I. & G. N. R. Co., 27 Tex. Civ. App. 325, 64 S. W. 1005; H. & T. C. Ry. Co. v. Sloan, 32 S. W. 85; Hall v. H. & T. C. Ry. Co., 125 S. W. 950; Holt v. Texas Midland R. R. Co., 160 S. W. 327; Curtis v. St. L. & S. F. R. R. Co., 96 Ark. 394, 131 S. W. 947, 34 L. R. A.

(N. S.) 466, Ann. Cas. 1912B, 685; H. & T. C. R. Co. v. Clemmons, 55 Tex. 88, 40 Am. Rep. 799; G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; St. L., I. M. & So. Ry. Co. v. Cox, 60 Ark. 106, 29 S. W. 38; Tex. Mid. R. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; Ratteree v. G., H. & S. A. Ry. Co., 36 Tex. Civ. App. 197, 81 S. W. 566. Appellee, on the contrary, maintains that under the circumstances stated the issue of contributory negligence vel non was for the jury, and that the evidence supports the verdict thereon in appellee's favor, citing: Railway Co. v. Dereberry, 167 S. W. 30; Railway Co. v. Bean, 55 Tex. Civ. App. 341, 119 S. W. 328; Railway Co. v. Longino, 54 Tex. Civ. App. 87, 118 S. W. 198; Railway Co. v. Abbott, 170 S. W. 117; Railway Co. v. Johnson, 101 Tex. 422, 108 S. W. 964; Railway Co. v. Hutchingson, 132 S. W. 509; Railway Co. v. Jahn, 18 Tex. Civ. App. 74, 43 S. W. 575; Railway Co. v. Armstrong, 4 Tex. Civ. App. 146, 23 S. W. 236; Railway Co. v. Finley, 163 S. W. 104. To which may be added: C., R. I. & G. Ry. Co. v. Johnson, 111 S. W. 758; Railway Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; St. L. S. F. & T. Ry. Co. v. West et al (No. 8069) 174 S. W. 287, by this court not yet officially published.

[2] The difficulty of determination in such cases is generally not so much one of law as one of making the proper application of well-known legal principles to the ever-varying circumstances of the causes presented for review. The general rule, as has been often stated is, that:

"Negligence, whether by the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is a violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question. In other words, to authorize a court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

See Choate v. S. S. & A. P. Ry. Co., 90 Tex. loc. cit. 88, 36 S. W. 247, 37 S. W. 319. We will not undertake to analyze the several decisions that have been cited by the contending parties here. The cases often seem of conflicting tendencies, and a very satisfactory analysis of some of them was made by Mr. Justice Dunklin in the case of Railway v. West, above cited. It will be sufficient to here say that we think it will be found, generally speaking, that in those cases where the courts have declared a party guilty of negligence as a matter of law in attempting to cross a railway track between cars to which is attached a live engine, there is an absence of justifying or excusing circumstances. In other words, in such cases no circumstance is made to appear which, in its natural effect, is sufficient to excuse one in the exercise of ordinary care for his own safety in attempting to do an act which otherwise would plainly constitute negligence. The present case we think is easily distinguishable from the class of cases last mentioned. The evidence as interpreted by the verdict of the jury shows, not only that the shipment in question was accepted for transportation over the line of a connecting carrier, but that it had long so accepted shipments on the part of appellee and others. It further shows that the terminus of appellant's line and the end of shipments thereover was located on the north side of the tracks of its connecting carrier, the Texas & Pacific Railway Company; that it was necessary for shippers over the line of appellant in the further transportation of their property to cross over from appellant's terminal point to the depot of the Texas & Pacific at Weatherford in order to arrange for further transportation. The evidence fails to show any specially designated or prepared way of crossing other than the way followed by appellee on the occasion in question. On the contrary, the evidence shows that appellee, and others for many years, in making shipments of cattle had proceeded precisely as was done on the occasion under consideration, and that this was done, not only within the knowledge of the operatives of appellant's trains, but in some instances by their express direction. The evidence is further to the effect that on all previous occasions appellant's trains had remained stationary upon the track a sufficient time to enable appellee to make the crossing as he did in safety, and that at no time previous had such train been moved without a warning signal by the bell or whistle of the locomotive. Appellee knew, as he testifies, that the engine was attached to the train, and that it might move at any time, and that it would be dangerous to attempt to cross while it was moving. But there was not necessarily any danger in crossing in the manner in which he did while the train was stationary. The danger was in the movement of the train without notice, and this had never theretofore occurred within the knowledge or experience of appellee, and appellee did not know it was then to be so done. We do not think it can be said as a matter of law under such circumstances that appellee was necessarily guilty of negligence, or that a man of ordinary prudence under the same circumstances might not have attempted to cross in the manner he did, notwithstanding the fact that he might have passed either to the front or to the rear of the train.

In our consideration of the question we have not undertaken to strictly define the distinctions between a trespasser and licensee upon a railway track, for it cannot be questioned, under the evidence in this case, that within the knowledge of the operatives of appellant's trains through a long series of years shippers were in the habit of crossing its tracks between cars in the manner appellee undertook to do in this case, and

appellee, therefore, whether his status was that of licensee or a trespasser, was entitled to some care on the part of the operatives of the train in his protection. As said by our Supreme Court in Tex. & Pac. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232:

"It is often said that a railroad owes no duty to a trespasser or one wrongfully on its track, except to refrain from wanton injury to him. This doctrine has never been adopted in this state, but has been expressly repudiated. In the case of Railway v. Sympkins, 54 Tex. 618 [38 Am. Rep. 632] the court says: 'We do not assent to the proposition that a railroad company may not become liable to one who is run over and injured by reason of the want of watchfulness of its servants, although such person may have been originally a trespasser on the track. If a party be wrongfully on the track under such circumstances, or, being there, acts in such a way as to be himself a proximate cause of his own injury, he will be precluded from recovery on grounds of public policy, as being himself guilty of contributory negligence. Although the company's agents may have failed in proper watchfulness, the injured person is regarded as being himself too directly a cause of the injury to be allowed to complain. * * * We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence.' "

See, also, M., K. & T. Ry. v. Malone, 102 Tex. 269, 115 S. W. 1158.

If, then, appellant owed a duty of watchful care to avoid an injury to appellee, it logically follows, we think, that appellee in turn had a right to expect the exercise of such care, and that this fact, together with the previous practice of appellant's employés to give warning before the movement of the train, tends to relieve appellee from the imputation of negligence in attempting to cross between the cars rather than go around them. At least these circumstances, together with the other circumstances, we think were sufficient to require the submission of the issue of appellee's contributory negligence to the jury. See cases hereinbefore cited in behalf of appellee.

[3] Error is assigned to the action of the court in permitting the plaintiff, in his own behalf, over objection of defendant, to testify as follows: "I am a married man. Q. Have you a family? A. Yes; one boy." The testimony was objected to as irrelevant and immaterial, but the objection was overruled, and we must now determine the effect of the ruling. It is difficult to see the relevancy, if any, of the evidence objected to, and it has been more than once held in this state that the introduction of such testimony constituted such error as to require a reversal of the judgment. See Railway Co. v. Hamilton, 17 Tex. Civ. App. 76, 42 S. W. 358, cited in behalf of appellant, and Railway Co. v. Thomas, 132 S. W. 974. These decisions, however, were prior to the promulgation of rule 62a (149 S. W. x) which reads:

"No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court."

[4] So guided, we have concluded that the error here noted ought not to require the reversal of the present judgment. Its prejudicial tendency was to enhance the amount of the recovery through motives of sympathy. There is nothing in the record otherwise indicating a probability that the sympathies of the jury were in any manner improperly aroused, and while appellant by another assignment attacks the verdict as excessive, yet under the evidence we do not think it is so. The evidence shows that appellee was but about 30 years old, with a life expectancy of some 35 years; that before his injury he had an earning capacity of from $4,500 to $5,500 a year; that the injury suffered resulted in the entire loss of his right foot, except the heel, which was saved by the surgeons; that his suffering was long and for more or less of the time very naturally intense; that his ability and usefulness in his usual occupation of a cattleman has been impaired something like one-half. The judgment was for but $9,964. We cannot therefore think that the mere circumstance that plaintiff was a married man, with one child, has any material influence with the jury, either to cause them to find for him when they otherwise would not, or to inflate the size of the recovery. So concluding, the assignment will be overruled.

[5] Error is assigned to the fifth paragraph of the court's charge, which reads:

"If you believe from the evidence that through the knowledge or acquiescence of the agents and employés of the defendant in charge of its freight and cattle trains, it had become and was, at the time plaintiff was injured, the common practice and custom of shippers of stock and men in charge of such shipments, after they had alighted from defendant's trains, and in leaving the yards of defendant at the place in question, to cross over defendant's train between the cars thereof, and if you believe that such practice and custom, if any there was, was known to defendant's employés who were, at the time in question, operating the defendant's train in question; or if you believe that such practice and custom, if any, was of such character and duration that said employés, as persons of ordinary prudence, ought to have known of same; and if you believe that such practice and custom, if any, was such as to require said employés, in the use of ordinary prudence, to look out for persons crossing its train; and if you further believe from the evidence that the plaintiff, after he had alighted from defendant's train, was leaving defendant's yards in the usual and customary way, and that, in the use of ordinary care and in pursuance of the said usual custom and practice, if there was such, he was crossing over between two of plaintiff's cars, and that while he was so crossing, the said train was suddenly and without warning started and moved backward, and that thereby plaintiff's foot was caught between said cars, and

that he thereby received the injuries complained of; and if you believe that the defendant's employés in charge of said train knew of the presence of plaintiff between the cars, or that in the use of ordinary care and prudence they should have known of or discovered plaintiff's presence between said cars; and if you believe that said employés, in backing or moving said cars, in the manner in which they did back or move them, and under the circumstances, were guilty of negligence, and that such negligence was the proximate cause of plaintiff's injuries— you will find for the plaintiff, unless you find for defendant under other instructions.

"In this connection you are instructed that plaintiff cannot recover in any event under paragraph 5 of the charge, unless you believe from the preponderance of the evidence that it was customary for shippers of stock to cross defendant's train at the place and under the circumstances of this case, and that the employés of the defendant knew, or ought to have known, of such custom, by the exercise of ordinary care, and unless you further believe that said employés of defendant, in backing or moving its train on the occasion in question, were guilty of negligence that proximately caused plaintiff's injuries."

Appellant's proposition is that:

"There being no evidence before the court that appellant's employés in charge of its train knew of the presence of appellee between the cars at the time they moved or backed the train, it was error for the court to submit that issue to the jury."

We think, however, that a scrutiny of the charge plainly shows that the criticism presented is unfounded. As we interpret it, the court did not undertake in the paragraph quoted to submit the issue of discovered peril as a ground for recovery. The effort rather appears to have been a submission of the question of whether appellant's operatives knew, or could have known, of appellee's presence between the cars, as there was evidence tending to show, as a circumstance to be considered with all the other circumstances in determining whether such operatives were guilty of negligence in moving the train as they did without giving any warning, for in another part of the charge the jury were distinctly instructed that they could not find for plaintiff at all if they believed from the evidence that in going upon, or in attempting to cross over, the drawheads between the defendant's cars, he failed to act as a person of ordinary prudence would have acted under the same circumstances, thus excluding the idea that the court intended to impose a liability upon appellant on the theory of discovered peril, regardless of appellee's contributory negligence.

[6] The sixth paragraph of the court's charge is objected to on the ground that it submits to the jury the issue of whether appellant's conductor, in charge of its train on the journey from Mineral Wells to Weatherford, instructed and advised appellee to cross over between its cars in going from its yards to the Texas & Pacific depot, "without any evidence in the record to sustain such issue." We are inclined to think that the evidence raised the issue, but we have concluded to overrule the assignment on other grounds.

The act of 1913 (page 113), after providing that the court's charge shall be submitted to counsel for their objection, further provides that:

"The ruling of the court in the giving, refusing, or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing article."

See Vernon's Sayles' Tex. Civ. Stat. art. 2061. By the terms of the act, as pointed out by us in the case of the Texas & P. Ry. Co. v. Tomlinson, 169 S. W. 217, the article quoted is made a part of the chapter relating to bills of exception. Article 2059 of the chapter provides that:

"No particular form of words shall be required in a bill of exceptions; * * * but such circumstances, or so much of the evidence as may be necessary to explain it, and no more, and the whole as briefly as possible."

We think it evident that the purpose of the act as a whole was that counsel should point out to the court, with at least reasonable certainty, the specific objection in mind that they had to the charge excepted to, to the end that the court might correct the defect, if one was pointed out. In the bill of exception taken in the present case to the sixth paragraph of the court's charge there is no specific objection made. The bill, after setting out the paragraph, reads:

"To which action and ruling of the court in overruling defendant's objection to said sixth clause of the court's charge and in charging the jury in the manner stated in said sixth clause of the court's charge, the defendant at the time in open court excepted, and here now excepts and presents this, its bill of exception, and asks that the same be examined, allowed, and approved by the court and ordered filed, and be made a part of the record in this cause," etc.

We think such general objection to the charge insufficient as a basis for an assignment of error. By the bill of exception referred to it could not be told whether the real objection in the mind of counsel was that the issue presented in the paragraph had not been alleged, or that there was no evidence, as now asserted, authorizing its submission. The court was not required to search for objections not apparent on the face of the charge or otherwise disclosed. Nor can the defect in the bill of exception be aided, if under any circumstances allowable, by reference to appellant's motion for a new trial. The fifteenth ground thereof, which is made the assignment under consideration, reads:

"Because the court erred in the sixth paragraph of his charge, wherein he charged the jury as follows."

Then follows a quotation of the charge without any further statement. So that, in any view of the assignment, it ought not be considered, both because of itself too general, and because the bill of exceptions upon which it is based is likewise insufficient.

A number of assignments are presented to the action of the court in refusing special instructions. The special charges requested and refused have each been carefully exam-

ined, and we think they were all properly refused, in that they were either upon the weight of the evidence, or were otherwise sufficiently presented in the court's general charge. There are also a number of objections to the evidence, but none of them do we think present questions of material importance. The test made by the plaintiff on whether a party in the position in which he was at the time he undertook to cross between the cars of appellant's train could be seen from a locomotive seems to have been made under substantially similar circumstances, and therefore the evidence was not subject to the objection made.

[7, 8] And the refusal of the court to permit appellant to contradict appellee by the testimony of the witness Varner seems to be without prejudice, in that the contradiction offered was apparently upon an immaterial matter, and, moreover, Varner had been present after having been released from the rule on the ground that he would not be used as a witness, and we see no abuse of discretion in the action of the court in thereafter refusing to permit him to testify.

[9] The verdict of the jury is attacked in one of the assignments of error on the ground that the amount thereof was ascertained and determined by lot. By our statute, the verdict of a jury may be attacked because of any misconduct on its part, or of the officer in charge of the same, or because of any communication made to the jury, or because the jury may have received other testimony. In such case, however, it is expressly provided that the court may hear evidence on the issues created by the attack, and that if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, "in the discretion of the court," be granted. See Vernon's Sayles' Tex. Civ. Stat. art. 2021. In the case before us, appellant supported its motion for new trial by the affidavits of two jurors, T. B. Davis and Ev. Galbreath. The affidavit of T. B. Davis, omitting formal parts, is as follows:

"During the time the jury was considering the case and trying to reach an agreement, the jury was not able to agree on any amount they would allow plaintiff, and could not agree upon any sum or amount whatever. Finally some member or members of the jury proposed, in order to reach an agreement on the amount of the verdict and the sum the jury would find and return for plaintiff, that each member of the jury write down on a separate piece of paper the amount he was willing to allow plaintiff and then place each piece of said papers in a hat, and then take said pieces of paper out of said hat and add the different and several sums and amounts shown on each piece of said papers together and divide the total amount shown by 12, and make the result and amounts shown and ascertained by such addition and division the verdict of the jury and return a verdict for plaintiff for the amount shown and ascertained by said addition and division. This proposition was finally accepted and agreed on by each and every member of the jury, and each and every member of the jury did then write down on a separate piece of paper the amount he was will-

ing to allow plaintiff, and placed said pieces of paper in the hat. The pieces of paper were then taken from the hat, and the amount written thereon by each member of the jury were added together and the total amount shown divided by 12. The amount shown by such division was the sum of $9.964, which amount was then returned into court by the jury as its verdict and the amount it allowed plaintiff."

The affidavit of the juror Galbreath was substantially of the same effect as that of Davis. Neither of these jurors, however, testified upon the hearing of the motion for a new trial, and appellee met their affidavits by the testimony of nine of the jurors who served in the trial of the case. Hamp Pitilow, foreman, testified, among other things, as follows:

"Before we figured up that amount there was no agreement on the part of the jury to abide by that result. There was no agreement at all."

R. N. Thompson, testified:

"There was no agreement on the part of the jury, before that time, to make whatever that amounted to their verdict."

Oscar Osborne testified:

"It was after we ascertained this $9,964 that we voted to see whether or not we were agreed on it."

D. L. Alexander testified:

"We took the last vote by standing up, a standing vote. I think the man who spoke was the high man; but anyway he made that proposition that we make that amount our verdict, and the foreman then put it to a vote and we all stood up."

Stanley Parrish testified, among other things, as follows:

"Before we took that standing vote there was no agreement on the part of the jury as to this amount."

Henry Carr testified:

"We voted to see whether or not that would be our verdict, this $9,964. After we found out how much it was we all voted on it to see whether or not we were all of the same mind on that point."

The testimony of other jurors was also of like effect. Under the circumstances indicated we do not think that we would be justified in interfering with the discretion in such cases vested in the court by the statute. The trial court overruled the motion for new trial, from which we must impute a finding that the verdict was not open to the attack made by the affidavits of jurors Galbreath and Davis. In the case of Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 989, where a similar attack was made upon a verdict, one of the jurors upon whose testimony it was proposed to get a new trial for misconduct of the jury—

"swore that it was agreed to take a vote, and as the majority of them voted, so should be their verdict; that upon taking a ballot the majority voted for the defendant, and that by reason of such ballot a verdict rendered for the defendants. Another juror (and there were but two examined) testified that when the jury retired they agreed to take a ballot, but declined to say that they agreed to be governed by the ballot; that the ballot was taken and they afterwards passed upon special issues, but he again declined to say that any juror's vote was influenced by the ballot taken."

It was held by our Supreme Court that under such circumstances no abuse of the trial court's discretion was shown. See, also, Railway Co. v. Hawkins, 50 Tex. Civ. App. 128, 109 S. W. 221; Railway Co. v. Blue, 46 Tex. Civ. App. 239, 102 S. W. 128; Railway Co. v. Light, 54 Tex. Civ. App. 481, 117 S. W. 1058; Railway Co. v. Montgomery, 139 S. W. 885; Railway Co. v. Swann, 127 S. W. 1164; Leverett v. State, 3 Tex. App. 217. The assignment under consideration will be overruled.

The remaining assignments raise questions already disposed of. None has been presented which questions the sufficiency of the evidence to sustain the verdict of the jury on the issue of appellant's negligence, and, believing as we do, that on the whole the testimony supports the material allegations of plaintiff's petition, and that the case was fairly submitted, all assignments of error are overruled, and it is ordered that the judgment be affirmed.

Affirmed.