WICHITA VALLEY RAILWAY COMPANY V. ARTHUR V. WILLIAMS, BY NEXT FRIEND.

No. 4638. Decided December 1, 1926.
(288 S. W., 425).

**1.—Carriers of Passengers—Degree of Care—Charge.**

An instruction that "carriers of passengers are required by law to exercise a very high degree of care in handling passengers," without defining what a high degree of care is, when duly excepted to for that reason, was erroneous and is held ground for reversal. (Pp. 263-265).

**2.—Same—Cases Followed.**

International & G. N. R. Co. v. Halloren, 53 Texas, 46; Gulf, C. & S. F. Ry. Co. v. Conley, 113 Texas, 472; St. Louis S. W. Ry. Co. v. Gresham,

106 Texas, 452; Houston & T. C. Ry. Co. v. Keeling, 102 Texas, 521; International & G. N. R. Co. v. Welch, 86 Texas, 203; approved and followed. (Pp. 263-265).

### 3.—Carriers of Passengers—Instructions—Exceptions—Requesting Charge.

Though the failure to define "very high degree of care" was in the nature of a mere omission, not of incorrect statement, the defendant who duly reserved exception to the charge on that ground was not required to request an instruction supplying the omission in order to avail himself of the error, his right without such request being secured by statute. (Rev. Stats., 1925, Art. 2185; Art. 1971, Rev. Stats., 1911). (P. 265).

### 4.—Verdict—Error in Charge—Presumption as to Injury.

Under instructions defining negligence as failure to use ordinary care, that which an ordinarily prudent person would exercise under similar circumstances, but also charging that defendant as a carrier of passengers was under the duty of using a very high degree of care for their protection, special findings by the jury that defendant was negligent in various omissions causing the injury could not be held as findings that such default consisted in a lack of ordinary care as defined. They might as well, or rather, be construed as findings of failure to use the very high, but undefined degree of care required of him, and would not render harmless the error in failing to define same. The presumption would be that the erroneous charge worked injury to defendant. (Pp. 265, 266).

### 5.—Cases Followed.

Emerson v. Mills, 83 Texas, 385; Gulf, C. & S. F. Ry. Co. v. Johnson, 91 Texas, 569; Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 349; Lamar v. Panhandle & S. F. Ry. Co., 248 S. W., 34; followed. (Pp. 266, 267).

### 6.—Excessive Verdict—Remittitur—Reversal for Other Errors.

The Court of Civil Appeals, on finding a judgment appealed from excessive, is required by Art. 1862, Rev. Stats., 1925 (1631, 1029), to indicate the amount of remittitur which would cure such error. And this, it seems, should be done when reversing for such excess, though the case be also reversed for error in the charge. (Pp. 267-269).

Questions certified from the Court of Civil Appeals for the Eleventh District, in an appeal from Taylor County.

The Supreme Court referred the questions to the Commission of Appeals, Section B, for its opinion thereon, and adopts and certifies same as the answer of the court.

Before the court's charge was read to the jury defendant objected to that part of it "wherein the court instructs the jury that carriers of passengers are required to exercise a very high degree of care in handling their passengers, for the reason that the same does not define and instruct the jury as to what a high degree of care is," and reserved an exception to the overruling of this objection.

*Thompson, Barwise & Wharton* and *Kirby, King & Overshiner,* for appellant.

The trial court erred in giving in charge to the jury that part of the court's main charge wherein the court instructed the jury that carriers of passengers are required by law to exercise a very high degree of care in handling the carrier's passengers, the error of the trial court being that it did not define and instruct the jury as to what a very high degree of care was, hence the error as pointed out herein.   I. & G. N. R. Co. v. Halloren, 53 Texas, 46; St. Louis S. W. Ry. Co. v. Gresham, 106 Texas, 452; Houston & T. C. Ry. Co. v. Keeling, 102 Texas, 521; Gulf, C. & S. F. Ry. Co. v. Locker, 273 S. W., 831; Lamar v. Panhandle & S. F. Ry. Co., 248 S. W., 34; Gulf, C. & S. F. Ry. Co. v. Conley, 113 Texas, 472, 260 S. W., 561; I. & G. N. Ry. Co. v. Welch, 86 Texas, 203; Patterson v. Williams, 225 S. W., 89; Fort Worth & N. O. Ry. Co. v. Enos, 50 S. W., 595; Denison, B. & N. O. Ry. Co. v. Barry, 80 S. W., 634; May v. Hahn, 54 S. W., 416; Freeman v. Moreman, 146 S. W., 1045.

Such error was calculated to affect the jury in their findings on issues submitted to them in Questions 1, 2, 3, 4 or 7 of the court's main charge.   Philadelphia Und. Agency v. Driggers, 101 Texas, 392; Moore v. State, 107 Texas, 492, 181 S. W., 438; Emerson v. Mills, 83 Texas, 385; Gulf, C. & S. F. Ry. Co. v. Johnson, 91 Texas, 569; Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 349; Lamar v. Panhandle & S. F. Ry. Co., 248 S. W., 34.

We find that the verdict is excessive, and in light of the record are inclined to reverse the judgment therefor.   Have we the authority to reverse and remand because of the excessive verdict or judgment or is it mandatory that we require a remittitur? Chicago, R. I. & G. Ry. Co. v. Forrester, 137 S. W., 162; C. R. I. & G. Ry. Co. v. Johnson, 224 S. W., 277; Wichita Falls, R. & Ft. W. Ry. Co. v. Combs, 268 S. W., 447.

*Ben L. Cox, Thos. E. Hayden, Jr.,* and *W. J. Cunningham,* for appellees.

The charge that "Carriers of passengers are required by law to exercise a very high degree of care in handling their passengers" is abstractly correct, and no special issue being requested to extend the application of the charge, no error was committed.   Byron v. Brownfield, 269 S. W., 202.

The court's charge that "Carriers of passengers are required by law to exercise a very high degree of care in handling their passengers" placed a burden upon the appellee more onerous than the law required and was in favor of and not against appellant, therefore is not reversible error.   Houston & T. C. Ry. Co.

v. Keeling, 102 Texas, 521; Ft. Worth & D. C. Ry. Co. v. Peters, 7 Texas Civ. App., 78, 25 S. W., 1077.

The court's charge on negligence, proximate cause, and the care required of carriers of passengers were each complete in themselves, and unrelated to each other. Negligence and proximate cause were the only instructions applied to any of the special issues submitted to the jury. The degree of care required by carriers of passengers as set out in the court's instructions was not applied to any of the special issues, and was irrelevant to any of the answers to said special issues. H. & T. C. Ry. Co. v. Keeling, 102 Texas, 521, 120 S. W., 847; Goldstein v. Cook, 22 S. W., 762.

Appellant contends that it has been deprived of a legal right because the definition of *a high degree of care* was not given, but since the issue on a high degree of care is not involved in the pleadings or facts or any of the issues submitted to the jury, the appellant was not deprived of any legal right.

Rule 62a governing appellate courts applies to the question raised in this charge, and before the appellate court should reverse the judgment of the trial court on account of said charge the appellate court should find that the giving of said charge by the trial court denied the appellant a substantial right in the trial court and that said charge led to the rendition of an improper judgment in the court below. Rule 62a, 149 S. W., x.; Railway Co. v. Kraft & Madero, 212 S. W., 982; Burrell E. & C. Co. v. Grisier, 240 S. W., 901; Empire Transfer Co. v. Botto, 232 S. W., 347; Fults v. Waterman Lbr. Co., 217 S. W., 1105; McAdoo v. McClure, 232 S. W., 352; Howell v. West, 227 S. W., 253; Muir v. Stevens, 221 S. W., 1119; Bank v. Combs, 203 S. W., 1169; Panhandle C. & E. Co. v. Dowlin, 247 S. W., 876; Railway Co. v. Midland Merc. Co., 216 S. W., 627; Aetna Accident, etc. Co. v. Trustees, 218 S. W., 537; Minnick v. Dryer Motor Co., 227 S. W., 365; Bland v. Cruce, 238 S. W., 722; S. W. Portland Cement Co. v. Bustillos, 216 S. W., 268; Bank v. Friar, 167 S. W., 261; Texas State Bank v. First Natl. Bank, 168 S. W., 507; Railway Co. v. Parke, 169 S. W., 397; Railway Co. v. Elias, 184 S. W., 312; Railway Co. v. Oates, 185 S. W., 1015; Sulzberger v. Hille, 187 S. W., 992; McConkey v. McConkey, 187 S. W., 1100; Railway Co. v. Whorton, 191 S. W., 397; Vakey v. Phelps, 194 S. W., 601; Railway Co. v. Williams, 194 S. W., 1154; Railway Co. v. Jones, 196 S. W., 359; Kennard v. Houston Hotel Assn., 197 S. W., 1139; Railway Co. v. Dawson, 201 S. W., 247; Zeiger v. Woodson, 202 S. W., 166.

Under Art. 1862 of the Revised Civil Statutes of 1925, and

under the decisions of the Supreme Court construing said statute it was mandatory upon the Court of Civil Appeals in this case to indicate to appellees in what amount said Court of Civil Appeals found the judgment in this case to be excessive, and afford appellee an opportunity to remit the excess; and it is erroneous for said Court of Civil Appeals to reverse the case and remand it for a new trial on the excessiveness of the judgment alone. Rev. Stats., 1925, Art. 1862; Wilson v. Freeman, 185 S. W., 993; Railway Co. v. Swann, 127 S. W., 1164; Harris v. Caldwell, 276 S. W., 301.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Eleventh District:

"In the above entitled cause pending in the Court of Civil Appeals for the Eleventh Supreme Judicial District of Texas, at Eastland, Texas, there have arisen issues of law which said Court of Civil Appeals deems it advisable to present to the Supreme Court for adjudication.

"Preliminary to said questions of law which are here certified to the Supreme Court, we deem it proper to make the following statement as to the nature of said issues of law, from the record in the case, which is sent up herewith, to-wit:

"This suit arose in the District Court of Taylor County, Texas, and was tried before a jury. Appellee, Arthur V. Williams, and other parties, were plaintiffs in the trial court and the appellant, Wichita Valley Railway Company, was the defendant in the lower court. None of the issues certified concern any of the plaintiffs except Arthur V. Williams, and who will be referred to hereinafter as 'Plaintiff' and the appellant, Wichita Valley Railway Company, will be referred to hereinafter as the 'Defendant.'

"The case went to trial on plaintiff's second amended original petition (Tr. p. 2, et seq.) and upon defendant's second amended original answer (Tr. p. 9, et seq.). Plaintiff alleged in substance that he was a passenger on defendant's line of railway from Wichita Falls, Texas, to Abilene, Texas, on the first day of November, 1924, and that when the train upon which he was riding had arrived at Abilene, it was necessary for said train to stop at a certain switch on Rose Street, in the City of Abilene, and thereafter back up to defendant's station in Abilene, some-

thing like a quarter of a mile. He further alleged that defendant, for a number of years prior to said date, had been accustomed to take on and discharge passengers at said Rose Street switch, and that the custom was well established, and that plaintiff on the occasion that he was a passenger requested the conductor on said train to let him off at Rose Street switch, and it is alleged in the petition that the conductor agreed to do so. It was further alleged that when the train stopped at Rose Street switch that plaintiff immediately got up from his seat and with due dispatch proceeded to alight from said train, and that when he had reached the steps of the coach and was about to step from the top step thereof to the second step that the engineer on said train, without waiting a reasonably sufficient length of time to enable plaintiff to alight in safety, suddenly and without warning and with great violence caused the train to be backed up and plaintiff was knocked off of the steps of the coach to the ground and sustained the injuries for which he sued, the petition alleging (Tr. p. 6) the following injuries, to-wit:

"'Eighth: Plaintiffs further allege that on said occasion said minor plaintiff (Arthur V. Williams) sustained injuries and damages as follows, to-wit: That his left arm and hand were crushed and mangled under the wheels of said train so that it was necessary to amputate the same, and same was amputated, about half-way between the elbow and the wrist joint; by virtue of which he has suffered and will continue to suffer mental and physical pain and inconvenience; and that plaintiff's back was injured by virtue of the manner in which he was thrown to the ground, his back having struck the steps of the coach, or the end of a cross tie, or rock, or some other hard substance on defendant's right-of-way, which severely bruised the muscles and nerves at the point where said plaintiff's back struck said object, and that plaintiff's back was thereby rendered very sore from said bruises and caused him severe pain and anguish, and that the vertebrae of his back at said point, to-wit, in the small of his back, were somewhat strained by said fall, which also caused him great pain and anguish, but that said injuries to his back and the muscles thereof and the vertebrae were temporary injuries and have almost completely healed and in time will probably heal entirely, but that the injury caused by the loss of his arm is a permanent injury. Said plaintiff also alleges that said blow on his back where his back struck said hard substance was immediately over his kidneys and that his kidneys were also bruised by the impact of said blow, and that by

virtue of said bruises an excessive amount of albumen has been caused to accumulate on his kidneys which causes plaintiff considerable pain and will probably cause him pain and annoyance for a number of years to come. That said albumen irritates said plaintiff's bladder and causes him pain and that his kidneys are thereby caused to act more frequently than they otherwise would, and that this condition has continued since said injury and may continue for a number of years to come. Said plaintiff alleges that at the time of said injury he was engaged in the public schools of Abilene as a teacher in the High School at the salary of $125 per month, and that he was also a student of medicine, and under the American mortality table he had a life expectancy of more than twenty-five years, he being at the date of said injury twenty years of age, and that plaintiff has been permanently injured and incapacitated to perform his duties in the future, or any other duties, and that his earning capacity has been permanently destroyed and impaired, by virtue of all of which injuries said plaintiff has been damaged in the sum of $45,000.'

"The defendant defended by general denial and specially pleaded that plaintiff was guilty of contributory negligence in attempting to alight at the time and place alleged in the petition, knowing that it was not a regular passenger station; and also defended on the ground that plaintiff's injuries were due to unavoidable accident; and also defended on the ground that plaintiff was negligent in not alighting from the train with due dispatch after same had stopped at the switch.

"We refer both to the petition (Tr. p. 2 et seq.) and the answer (Tr. p. 9 et seq.) and make said pleadings a part of this certificate in so far as they may be assential to the questions certified, but we deem the above brief statement therefrom sufficient for the purpose.

"The case was submitted to the jury upon special issues (Tr. p. 21 et seq.), the court's charge being as follows, and the issues were answered by the jury as indicated following each question (Tr. p. 84):

"This case will be submitted to you upon special issues, and your answers to the same will constitute your verdict.

"'Ordinary care' is that degree of care that an ordinarily prudent person would exercise under the same or similar circumstances.

"Failure to use 'ordinary care' is negligence.

"Carriers of passengers are required by the law to exercise a very high degree of care in handling their passengers.

·   "By the term 'proximate cause' is meant the direct, moving or efficient cause and without which the injury, if any, would not have occurred.

"Bearing in mind the foregoing instructions, you will answer the following questions:

"Question No. 1.   On and prior to November 1, 1924, had defendant been accustomed to take on and discharge passengers at the switch on Rose Street where plaintiff, Arthur V. Williams, is alleged to have been injured?

"Answer yes or no.   Answer: Yes.

"Question No. 2.   Was plaintiff, Arthur V. Williams, on November 1, 1924, aware of the custom of the defendant, if any, in taking on and discharging passengers at the switch on Rose Street described in plaintiff's petition?

"Answer yes or no.   Answer: Yes.

"Question No. 3.   Did the conductor of defendant's train on which plaintiff Arthur V. Williams was a passenger on November 1, 1924, agree with said plaintiff that he might be discharged from said train at the switch on Rose Street described in plaintiff's petition?

"Answer yes or no.   Answer: Yes.

"Question No. 4.   Did defendant's employees, who were in charge of the train in question, stop said train at the switch in controversy a reasonably sufficient length of time within which to permit plaintiff, Arthur V. Williams, by exercising reasonable diligence and dispatch to alight from said train before said train was again put in motion?

"Answer yes or no.   Answer: No.

"Question No. 5.   If you have answered Question No. 4 in the negative, then answer:

"Were defendant's said employees negligent in so failing to stop said train at said switch for a sufficient length of time to permit said plaintiff to alight therefrom before the said train was again put in motion, if they did do so?

"Answer yes or no.   Answer: Yes.

"Question No. 6.   Was such negligence, if any, the proximate cause of the injuries, if any, to plaintiff Arthur V. Williams?

"Answer yes or no.   Answer: Yes.

"Question No. 7.   Did the defendant's employees who were in charge of the train in question, cause said train to be backed up suddenly and violently just as plaintiff Arthur V. Williams had reached, or was about to reach, the top step of the coach from which he was alighting, and thereby knock said plaintiff off of said steps to the ground, as alleged in plaintiff's petition.

"Answer yes or no. Answer: Yes.

"Question No. 8. Was the action of defendant's employees, in charge of said train in question, in suddenly and violently backing up said train, if they did do so, negligence as that term has been defined to you in this charge?

"Answer yes or no. Answer: Yes.

"Question No. 9. Was such negligence, if any, the proximate cause of plaintiff's injuries, if any?

"Answer yes or no. Answer: Yes.

"Question No. 10. Did Arthur V. Williams fail to use reasonable diligence to alight from said train in question?

"Answer yes or no. Answer: No.

"Question No. 11. If you have answered Question No. 10 in the affirmative, then answer:

"Was the said Arthur V. Williams guilty of negligence, if any, in failing to use reasonable diligence, if he did so fail, to alight from the train at the time and place in question?

"Answer yes or no. Answer: x.

"If you have answered 'yes' to the preceding Question No. 11, then answer:

"Question No. 12. Did said negligence, if any, contribute directly and proximately to the injuries that said Arthur V. Williams received?

"Answer yes or no. Answer: x.

"Question No. 13. Was Arthur V. Williams guilty of negligence, if any, on his part, in attempting to alight where he did, instead of at the regular passenger station of the defendant?

"Answer yes or no. Answer: No.

"Question No. 14. Was Arthur V. Williams guilty of negligence, if any, in attempting to alight where he did at the time and place in question?

"Answer yes or no. Answer: No.

"If you have answered 'yes' to the foregoing question, then answer:

"Question No. 15. Did said negligence, if any, contribute directly and proximately to the injuries sustained by the said Arthur V. Williams?

"Answer yes or no. Answer: x.

"Question No. 16. What amount of money, if paid now in cash, would reasonably compensate Arthur V. Williams for the damages, if any, suffered by him, as alleged in the petition?

"Answer in dollars and cents. Answer: $24,000.00.

"Question No. 17. What amount of money, if paid now in cash, would compensate plaintiffs J. D. Williams and his wife

Alice V. Williams, for the damages, if any, suffered by them by virtue of the injuries, if any, to the plaintiff Arthur V. Williams?

"Answer in dollars and cents.  Answer: $1,000.00.

"In answering Questions 16 and 17 you will be guided by the following instructions:

"In determining the amount of damages due the parents of the minor plaintiff, if any, you will take into consideration the loss of time of the minor plaintiff, Arthur V. Williams, if any, proximately and necessarily caused by his injuries, if any, from the date of the alleged injury up until he arrives at his majority, to-wit, March the 28th, 1925; and the expenses, if any, necessarily and reasonably incurred by said parents for medical attention and nursing, if any.

"In determining the damages of the plaintiff Arthur V. Williams, if any, as a result of his injuries, if any, you will consider his lessened capacity to earn money, if any, after arriving at the age of twenty-one years, and during the remainder of his life, and you may take into consideration his pain and suffering, if any, as a result of such injuries, if any.

"The burden of proof is upon the plaintiffs to establish by a preponderance of the evidence the affirmative of special issues Numbers 1, 2, 3, 5, 6, 7, 8 and 9; and the burden of proof is upon the plaintiffs to establish by a preponderance of the evidence the negative of special issue No. 4.

"The burden of proof is upon the defendant to establish the affirmative of special issues Numbers 10, 11, 12, 13, 14 and 15.

"The burden of proof is upon the plaintiffs to establish the amounts, if any, called for in special issues Numbers 16 and 17.

"The burden of proof is upon the defendant to establish by a preponderance of the evidence affirmative answers to each and all of the special issues submitted to you herein at the request of the defendant.

"On the original submission of this cause, we reversed and remanded it for another trial.  We held at that time, as shown by our original opinion, that the giving of the following charge by the trial court over the timely objection of the defendant, was error:

" 'Carriers of passengers are required by law to exercise a very high degree of care in handling their passengers.'

"Our opinion sets out sufficiently our views relative to the error in this charge and we do not recede from our former holding that this portion of the court's charge was error.

"We likewise held in our original opinion, and now hold and

find, that the verdict of the jury was excessive under all the facts and circumstances of this case.

"Plaintiff in his motion for rehearing assigns error to our holding as above stated and has moved us to certify certain questions in this case to your honors.   Plaintiff contends, as one of his grounds for said motion, even though the charge in question is erroneous, that yet it is harmless and while we adhere to our former holding to the effect that the charge in question was erroneous and while we adhere to our former holding and finding that the verdict of the jury is excessive, we deem it advisable under the facts in this case to certify to your honors the following questions:

"(1)   Was the giving of the charge hereinbefore stated erroneous?   Was such error calculated to affect the jury in their findings on issues submitted to them or any of the issues in questions 1, 2, 3, 4 or 7 of the court's main charge?

"(2)   If you answer the above question in the negative, then are we authorized to say, as a matter of law, from the findings of fact made by the jury in response to questions 1, 2, 3, 4 and 7, that such findings of fact conclusively show that the Railway Company was negligent and that the erroneous charge on the issues of negligence submitted was immaterial.

"(3)   We hold that the charge is erroneous and hold that the charge is inconsistent with other definitions submitted by the court to the jury.   Is such error and inconsistency such as to be calculated to confuse and mislead the jury and require a reversal?

"(4)   We find that the verdict is excessive, and in light of the record are inclined to reverse the judgment therefor.   Have we the authority to reverse and remand because of the excessive verdict or judgment, or is it mandatory that we require a remittitur?"

The court's charge to the effect that "carriers of passengers are required by law to exercise a very high degree of care in handling their passengers" is an incomplete statement of the law and was subject to the objection and exception thereto seasonably presented and preserved by the railway company.   See International & G. N. R. Co. v. Halloren, 53 Texas, 46; Gulf, C. & S. F. Ry. Co. v. Conley, 113 Texas, 472; St. Louis S. W. Ry. Co. v. Gresham, 106 Texas, 452; Houston & T. C. Ry. Co. v. Keeling, 102 Texas, 521, 120 S. W., 847; International & G. N. R. Co. v. Welch, 86 Texas, 203, 24 S. W., 390.

A proper charge on a carrier's duty to its passengers was laid down in the Halloren case, supra, as follows:

"Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent and competent persons, under similar circumstances."

The charge just quoted was approved by Chief Justice Cureton in the very recent case of R. R. Co. v. Conley, supra. In that case, the court said:

"In no case called to our attention has it been held by any appellate court that the degree of care defined in the Halloren case is incorrect, and we are convinced that the definition there given is the accepted one in this State."

It is equally well settled that the use of mere adjectives in a charge is not a correct practice as against objection.

In the Welch case, supra, the jury was charged that the company must use "all possible care." The charge was held erroneous. Justice Brown, speaking for the Supreme Court, said:

"The charge is not more objectionable for what it means than for the want of any definite meaning. The object of giving a charge to a jury is to furnish them a guide by which they can determine from the evidence whether or not the party sought to be charged has done or failed to do the things which by law creates the liability. The term 'all possible care' might be understood by one man to mean all that the party could foresee, while it might mean to another all that might have been done as viewed after the occurrence. Besides, the law does not require everything to be done which might be foreseen, but only such as might appear to be necessary, having that care for the safety of the passengers that a very prudent man would have, and to exercise that high degree of care that such man would exercise under the same circumstances."

Judge Brown went on to say in his opinion in the Welch case:

"The jury could, from the instruction given, have no just or intelligent idea of what the law required the defendant to do to secure the safety of passengers. In the nature of things, the law must leave it to the juries in the exercise of a sound judgment, from their very knowledge of men, and the ordinary course of human affairs, to determine whether or not a carrier of passengers has exercised the degree of care required by law, and for that reason the charge should be such as to give the best direction to their investigation."

In the Keeling case, supra, the Supreme Court, speaking through Justice Williams, declared:

"While we held that the special charges were not affirmatively erroneous, and that they, therefore, furnish no cause for the reversal of the judgment, no more definite instruction having been requested, we agree with the Court of Civil Appeals in the opinion that such charges, attempting to define the carrier's duty only by use of an adjective, are not apt to convey to the minds of jurors any very definite conception of the subject. When such phrases are used, the standard by which the conduct of the carrier under investigation is to be judged, should be given in connection with them, which standard is the conduct of prudent and skillful carriers in like situations. Jurors are not put in a position to determine what constitutes the 'utmost' or the 'highest' or the 'high' degree of care referred to in charges, unless they are also told that it is that which such prudent and skillful carriers employ."

It is will be observed that the charges in this case are very much like the one in the case at bar.

In the Conley case, supra, Chief Justice Cureton made the following statement:

"To say that a jury, unadvised as to the meaning of a term of such intricate and variant usage, would likely give it a correct interpretation in the charge, in the instant case, is to be too credulous. To say the least, an explanation should have been given when objections were made."

In the Conley case, aforesaid, the jury had been told that the railway company must exercise the greatest degree of care short of a warranty.

In the instant case, the railway company had the right to have the charge made more complete and conform to the law as laid down in the Halloren case, supra. It was error for the court to refuse to amend its general charge in view of the company's objections. ·

It is true that no special charge in this connection was requested by the railway company. But, that was not essential. In the Conley case, upon this point, the court said:

"But in the instance of a defective or erroneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by Article 1971 take the place of special charges, and render it unnecessary that the latter be tendered. It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law

or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge."

Of course, no case should be reversed because of an error which is not reasonably calculated to prejudice the rights of the litigant against whom the error was committed. In this case, it is contended that the jury were told that negligence was the want of ordinary care and that since the jury found the railway company guilty of negligence, they must have found that the company did not even exercise ordinary care and that if such was the intention of the jury in finding negligence, it was immaterial whether or not the company had used the high degree of care mentioned in the charge. It is true that the jury were so charged in defining negligence. In other words, they were charged that negligence was the want of ordinary care. But, it is equally true that they were also charged that a different degree of care was required of railway companies toward their passengers. Each portion of a charge is equally important and binding. The juries are presumed to read the entire charge. It is but reasonable to assume that the jury, in determining the negligence of the railway company, applied the company's duty as defined in the charge. And, that, in finding the plaintiff not guilty of negligence they applied the ordinary care theory. This is essentially a negligence case and the issues submitted required the jury to understand and apply these definitions.

In the case at bar, the Court of Civil Appeals held:

"It stands unchallenged that it was error for the court to fail to define high degree of care, and no decision of our courts or any rule provides any escape under the harmless error route. *We can see injury in the failure to so charge the jury.*"

Under the record here presented, the presumption is that the erroneous charge worked injury. See: Emerson v. Mills, 83 Texas, 385; Gulf, C. & S. F. Ry. Co. v. Johnson, 91 Texas, 569; Gulf, C. & S. F. Ry. Co. v. Greenlee, 62 Texas, 349; Lamar v. Railway Company, 248 S. W. (Com. App.), 34.

In the Emerson case, supra, the court said:

"An erroneous charge is presumed to have been injurious, and appellees must show that it was harmless."

In the Johnson case, supra, it was stated:

"The charge being erroneous, it is presumed to have been injurious to the interests of the defendant, and in such case the duty does not devolve upon the party complaining to show that

he was thereby injured, but upon him in whose favor the verdict was returned, to show that the complaining party was not prejudiced by the error."

In the Greenlee case, supra, our Supreme Court said:

"While the appellate court will indulge in the presumption that the verdict and judgment are right, yet, when it is apparent that the charge upon a vital issue is erroneous, it yields to the contrary presumption that the verdict, which might be founded upon an erroneous charge, is itself vicious. In such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon him in whose favor it was returned, to show that the complaining party was not prejudiced by the error."

In the Lamar case, supra, our court said:

"We think this is correct, and that every reasonable doubt should be resolved in favor of the one erred against. We do not think it can be said that 'in all probability' the verdict in the case at bar was not influenced by the withdrawal of this testimony. Therefore we think the giving of this charge withdrawing this evidence was not only error, but error for which the case should be reversed."

It appears reasonably doubtful, at least, as to whether or not the company was prejudiced by the giving of this erroneous charge. Therefore, the case should be reversed as held by the Court of Civil Appeals.

Bearing in mind what we have already said, we recommend that each portion of certified question No. 1 be answered in the affirmative.

Having recommended an affirmative answer to the first question certified, we think it unnecessary to answer the second question certified. It was only propounded upon the theory that the first question might be answered in the negative.

We recommend that the third question certified be answered in the affirmative.

This brings us to a consideration of the fourth question certified. The statute inquired about, Article 1862 of the 1925 Code, reads as follows:

"In civil cases appealed to a Court of Civil Appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party, or his attorney, within what time he may file a remittitur of such excess. If such remittitur is so filed, then the court

shall reform and affirm such judgment in accordance therewith; if not filed as indicated, then to be reversed."

This same statute (then Article 1631) was before our Supreme Court in the case of Wilson v. Freeman, Receiver, 108 Texas, 121. In that case, Justice Yantis answers the questions certified as follows:

"We think said statute is mandatory, and that the Court of Civil Appeals should not have reversed and remanded the case upon the ground alone that the verdict was excessive. True, it is difficult to ascertain the amount of the excess, but this difficulty arises in most cases of excessive verdicts. For instance, if a verdict is excessive on account of the passion and prejudice of the jury, aroused by inflammatory speech, it is difficult, and generally impossible, to ascertain with accuracy, what portion of the verdict was assessed because of the influence of inflammatory speech, and what portion of the verdict was based on the proper elements of damage, legally recoverable; or if the verdict assessed for the loss of a limb, or for some similar injury, is excessive, still it is difficult to ascertain with certainty the exact amount of the excess. All the Court of Civil Appeals can do, and all that is required of it to do, by said statute, is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess. The court must first determine what amount would be reasonable before it can determine what amount would be unreasonable. Texas & N. O. Ry. Co. v. Syfan, 91 Texas, 562, 44 S. W., 1064. Having determined that the verdict is excessive, or unreasonable, it is necessarily implied that the court has decided upon an amount that would be reasonable compensation for the injury which was actually suffered, in which event it should authorize a remittitur of the excess above the amount which would be reasonable compensation for the injury, in accordance with its sound judgment. We think that in the practical administration of justice, this is all that is required of the court to do in such cases, but we believe this much is the mandatory requirement of the statute quoted."

This pronouncement by our Supreme Court has never been overruled or modified. We feel that we cannot improve upon the statement of the law as made by this learned and lamented judge.

It must be remembered that this statute has always referred to the excessiveness of the verdict as the *sole* or *only* cause for reversal. It is true, of course, that no Court of Civil Appeals

should allow any verdict and judgment to stand if that court is of the view that the question of liability was determined by a prejudiced jury. The Court of Civil Appeals could and should set aside any judgment establishing liability for any amount if it appears to that court that prejudice existed and influenced the jury at the time it made such findings. If a finding of facts establishing any liability were so much against the weight of the evidence as to indicate prejudice, clearly the Court of Civil Appeals could set such findings aside. But, where the Court of Civil Appeals feels that the company is liable, and the *only* question is how much the damages are, then it is the duty of the Court of Civil Appeals to exercise its *"sound judgment"* in estimating the excessiveness of the verdict as returned by the jury. If the statement of facts before the Court of Civil Appeals should be so incomplete and insufficient as to make it impossible for that court to exercise "sound judgment" in estimating the damages due a given plaintiff, another question might be presented as to whether that court could reverse the case for that reason only. In the instant case, no such situation is presented and we do not decide it.

We recommend that the fourth question certified be answered to the effect that this statute is mandatory and that a remittitur should be required.          *Ben H. Powell,* Presiding Judge.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.          *C. M. Cureton,* Chief Justice.