**DALLAS RY. & TERMINAL CO. v. GARNER et ux.**

**No. 10853.**

Court of Civil Appeals of Texas. Dallas.

Sept. 19, 1931.

Rehearing Denied Oct. 24, 1931.

determined by lot, and is what is known as a "quotient" verdict; (2) errors of the court in the manner of the submission of issues of negligence, in that the court in effect required the exercise of a high degree of care by the motorman on certain issues of negligence, without regard as to whether the act complained of as negligence could have been reasonably anticipated by the motorman; (3) alleged unwarranted and prejudicial arguments by attorneys for appellees. These questions will be discussed in the order named.

It is not deemed necessary to make a statement of the evidence supporting the grounds of negligence relied upon by appellees, nor that supporting the grounds of defense relied upon by appellant, and submitted to the jury. The case was submitted to the jury on special issues, and several issues of negligence, either one of which would warrant the judgment, were found in favor of appellees. These findings are in the main on evidence that is sharply contradictory, but, as they are supported by substantial evidence, they are adopted as findings of this court.

The issue as to the misconduct of the jury was properly raised before the court on the hearing of the motion for a new trial, the evidence of three jurors was heard by the court, and the motion for a new trial was overruled. In the absence of a specific finding of fact on the issue of the jury's misconduct, this court must construe the order overruling the motion for a new trial as a finding of fact that there was no misconduct, and the question for review on this issue is, Does the record warrant such finding? Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372; St. Louis B. & M. Ry. Co. v. Cole et al. (Tex. Com. App.) 14 S.W.(2d) 1024; Bradley v. Railway Co. (Tex. Com. App.) 1 S.W.(2d) 861.

The undisputed evidence shows that the jury considered each of the special issues submitted in the order in which they were contained in the court's charge, and passed on each issue before going to the next succeeding issue; that a unanimous agreement was reached on all of the issues preceding issue No. 44, submitting the amount of damages suffered by Mrs. Garner by reason of the personal injuries received on the occasion in question. A discussion of issue No. 44 disclosed that there was a wide range of opinion among the jurors on the sum of money which would fairly recompense Mrs. Garner for the injuries suffered. These sums ranged from $900 as the minimum to $7,500 as the maximum amount, and no two jurors were agreed on the amount to be allowed. The undisputed evidence further shows that, at the suggestion of the foreman, who stated that they were directed to do so by the court's charge, each individual juror wrote down the amount he believed should be returned as an answer

Allen Charlton and Worsham, Rollins, Burford, Ryburn & Hincks, all of Dallas, for appellant.

J. Hart Willis and J. W. Madden, Jr., both of Dallas, for appellees.

JONES, C. J.

Appellees, C. R. Garner and wife, Lois Garner, instituted suit in a district court of Dallas county against appellant, Dallas Railway & Terminal Company, to recover damages for alleged personal injuries received by the wife in a collision between a street car operated by appellant and a small Ford truck, at the corner of Hall and Throckmorton streets in the city of Dallas on January 18, 1929. A judgment resulted in favor of appellees for the sum of $2,439.50, of which sum $93.50 represented hospital and medical expenses. Appellant has duly perfected its appeal.

There are three general grounds urged by appellant for a reversal of this judgment and a remanding of the case for another trial. These grounds are: (1) Misconduct of the jury, in that the verdict of the jury as to the amount of recovery for personal injuries was

to this issue, and that the foreman added these several amounts, divided them by twelve, receiving $2,346 as the quotient, and that this quotient was returned as the jury's verdict in answer to special issue No. 44, and made a basis for the judgment rendered by the court. The foreman was mistaken as to the court's charge in this respect, for it directed the jury not to arrive at the amount of the verdict in any such manner. The undisputed evidence of the jurors testifying shows that, after the foreman announced what the one-twelfth of the aggregate amount of the several sums handed in by the jury was, a unanimous agreement was reached that this would be the amount to be returned in answer to this special issue.

It is a general rule in civil actions that, for jurors to agree beforehand to accept one-twelfth of the aggregate amount of their several estimates as their verdict, without further deliberating on the amount so reached, invalidates the verdict. Missouri, K. & T. Ry. Co. v. Bounds (Tex. Civ. App.) 136 S. W. 269; Whisenant v. Schawe (Tex. Civ. App.) 141 S. W. 146; Galveston, H. & S. A. Railway Co. v. Brassell (Tex. Civ. App.) 173 S. W. 522; Hovey v. Weaver (Tex. Civ. App.) 175 S. W. 1089; Texas Midland Railway Co. v. Atherton (Tex. Civ. App.) 123 S. W. 704.

It is equally well settled that, although jurors divide the aggregate of their several estimates by twelve and return the quotient as their verdict, it will not be held to be legally objectionable if, after the amount has been ascertained, each juror deliberately assents to and accepts this amount as a fair and just verdict in his opinion. Missouri K. & T. Ry. Co. v. Hawkins, 50 Tex. Civ. App. 128, 109 S. W. 221; Chicago, R. I. & G. Ry. Co. v. Trippett, 50 Tex. Civ. App. 279, 111 S. W. 761; Missouri, K. & T. Ry. Co. v. Light, 54 Tex. Civ. App. 481, 117 S. W. 1058; Northern Texas Traction Co. v. Evans (Tex. Civ. App.) 152 S. W. 707; International & G. N. Ry. Co. v. Jones (Tex. Civ. App.) 175 S. W. 488; Weatherford, M. W. & N. W. Railway Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822; Bryan & C. Interurban R. Co. v. Ellison (Tex. Civ. App.) 241 S. W. 542, 545. Also see long list of Texas cases cited in 52 A. L. R. 45.

Each of the rules above announced gives due recognition to the rights of the litigants for a fair and impartial jury trial, and to the conscientious discharge by each juror of the duty resting on him in such trial to agree to render only such verdict as he conscientiously believes is fair and just to the litigants under the evidence in the case. The first rule denies to a juror the power to disable or hamper himself, in a conscientious discharge of his sworn duty, by entering into a pre-agreement as to what his verdict must be as to the amount of damages before he knows what this amount is. The second rule gives recognition to the well-known fact that, in the matter of ascertaining the amount of unliquidated damages, especially in the character of case as the one at bar, it is hardly possible for twelve men at once to reach the same conclusion. The amount of damages to be ascertained must be approached by each juror in a spirit of compromise, giving due regard to the opinion of his fellows, in so far only as such opinion does not run counter to his conscientious belief as to the amount of damages to be awarded. In other words, an agreement before the amount of damages is ascertained might run counter to the conscientious belief of a juror in this respect, and he should not be allowed to foreclose himself to object because of a previous agreement not to do so. Under the second rule, however, he is unhampered by any agreement to accept or reject the amount represented by the quotient, and is not obligated to accept it as his verdict, unless, in good conscience, he believes it to be fair and just. Under the method condemned by the first rule above quoted, the verdict is fixed by the previous agreement before any juror knows the amount; while under the method allowed by the second rule the amount ascertained is only a basis for further consideration, and may be accepted or rejected without consideration of any pre-agreement.

In the instant case, the court must have found that, when the jurors agreed, at the suggestion of the foreman, that each write down the sum he believed to be a just amount, and that these several amounts be added and divided by twelve, the quotient obtained was to be the verdict only in the event that each juror could assent to it as the amount he was willing to accept as his verdict on the amount of damages. The undisputed evidence is that, when the quotient was received, the foreman asked the jurors if such amount was satisfactory, and each agreed that such should be the verdict on this special issue. We think this conclusion of the court is warranted by the evidence. Where the evidence on a disputed issue before the trial court is susceptible to either of two inferences, and the trial court bases a finding of fact on one of such inferences, such finding of fact is binding upon this court. We therefore hold that the trial court did not abuse his discretion in overruling the motion for a new trial on the issue of misconduct of the jury, and overrule all assignments of error in respect thereto.

The second question under review, as to whether the court erred in the manner in which special issues of negligence alleged by appellees was submitted to the jury, will require a statement of such issues submitted, except as to the issue of whether the motorman sounded the gong as his car approached the intersection of Hall street, this issue being found against appellees.

Issue No. 1: "Do you find and believe from a preponderance of the evidence that the defendant's employee in charge of its car failed to exercise a high degree of care, as that term has been defined herein, for the safety of Mrs. Lois Garner in the matter of slackening the speed of the car at or about the intersection on the occasion in question?" Answer: "Yes."

Issue No. 5: "Do you find and believe from a preponderance of the evidence that the defendant's employee in charge of its car failed to exercise a high degree of care, as that term has been defined herein, for the safety of Mrs. Lois Garner on the occasion in question in the matter of having the car under control?" Answer: "Yes."

Issue No. 5: "Do you find and believe from a preponderance of the evidence that the defendant's employee in charge of its car on the occasion in question failed to exercise a high degree of care, as that term has been defined herein, for the safety of Mrs. Lois Garner in the matter of applying the brakes to the street car?" Answer: "Yes."

Issue No. 9: "Do you find and believe from a preponderance of the evidence that the defendant's employee in charge of its car on the occasion in question failed to exercise a high degree of care, as that term has been defined herein, for the safety of Mrs. Lois Garner in the matter of keeping a lookout for the approach of vehicular traffic on Hall Street as he approached the intersection of Hall and Throckmorton Street?" Answer: "Yes."

Issue No. 11: "Do you find and believe from a preponderance of the evidence that the defendant's employee in charge of its car failed to exercise a high degree of care, as that term has been defined herein, for the safety of Mrs. Lois Garner in the matter of the rate of speed at which said car was being operated on the occasion in question?" Answer: "Yes."

Each of these acts of negligence was found by the jury in response to other special issues to have been a proximate cause of the injuries received by Mrs. Garner.

■ Mrs. Garner was a passenger on appellant's street car, and as to her safety appellant was required to exercise what is termed a "high degree of care." This term was defined by the court in the main charge to be "such care as a very cautious and prudent person would exercise under the same or similar circumstances." This is the generally accepted definition of such term. International & G. N. Ry. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744; Gulf C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; St. Louis Southwestern Ry. Co. v. Gresham, 106 Tex. 452, 167 S. W. 724; Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425; Paris & G. N. Ry. Co. v. Atkins, 111 Tex. 306, 234 S. W. 66; Houston & T. C. Ry. Co. v. Keeling, 102 Tex. 521, 120 S. W. 847; International & G. N. Ry. Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829.

As we understand appellant's contention, it does not controvert the general proposition that a carrier of passengers is required to exercise a high degree of care for the safety of the passengers. We understand the objection to be that, under the facts of this case, such general rule should have been modified by the charge so as not to require from appellant more than ordinary care to anticipate and guard against the negligence of the operator of the Ford truck, especially when such negligence consisted in the operation of the truck in violation of law. It is also insisted by appellant that the motorman was not required to anticipate and guard against the unlawful operation of the offending driver of the Ford truck.

The evidence raised the issue, and the jury found, that the driver of the truck exceeded the speed limit allowed by city ordinances, and found other acts of negligence committed by the driver of the Ford truck, but also found in response to special issues that the negligence of the driver of the Ford truck was not the sole proximate cause of the injuries received by Mrs. Garner.

■ We cannot agree to appellant's contention in this respect. The collision occurred at an intersection of two streets. On one of these streets appellant was operating its car in a westerly direction; on the other and intersecting street the Ford truck, which collided with the street car, was being operated in a northerly direction, the respective courses being at right angles to each other. The motorman in charge of the street car was required to take notice that the users of the intersecting street would operate vehicles across the path of the street car. Under such conditions the duty rested on the motorman to exercise that degree of care that a very cautious and prudent person would exercise under such circumstances to avoid a collision with any vehicle using the intersecting street. It is generally known that one of the dangers imminent at every street crossing in larger cities is from the reckless and unlawful driving of automobiles. This danger is so common that we believe the trial court was warranted in applying the doctrine of a "high degree of care" and in submitting to the jury, in effect, the issue as to whether a very cautious and prudent person operating a street car across an intersecting street would anticipate the probability of such a danger and guard against it. We overrule appellant's contention in this respect.

■■ Appellant complains that one of the attorneys for appellees in his opening argu-

ment went outside of the record to indulge in inflammatory remarks, to appellant's prejudice. The specific argument referred to was an appeal to the jury that, if conditions at the scene of the collision were such as contended for by appellant, it would have shown same by pictures taken at the time, and stated that "You can juggle facts, but you couldn't juggle pictures. They would show exactly where they came together. * * * The plaintiff has no way of finding out where that street car is. The plaintiff has no opportunity to find out what street car that is, nor take a picture of it. They don't bring any pictures down here with reference to it." Attorneys are allowed much latitude in arguing issues of fact before the jury, and this applies to inferences drawn both from evidence offered or evidence not offered, if it reasonably appears it could have been offered. The evidence was sharply conflicting as to how the street car appeared immediately after the collision. Under such state of facts, we do not believe the attorney so overstepped the bounds of legitimate argument as to call for a reversal of this case.

We do not believe that the objection to the argument of the attorney who closed the case for appellees, as shown by bill of exception No. 16, is well taken. The bill of exception shows that it was made in reference to statements made by counsel for appellant, and, when it is considered that the court properly charged the jury as to the burden of proof, it is not believed a jury could have been misled as to where the burden of proof rested on those issues submitting appellees' case. There was no reversible error in the remarks of counsel. The same is true of bill of exception No. 18.

 We do not think reversible error is shown by bill of exception No. 19. This bill of exception shows that the attorney for appellees making the statement objected to was arguing the evidence of a witness for appellant taken by deposition. The deposition disclosed that the witness was a painter by trade, that at the time his deposition was taken he was at a hospital in the city of Dallas, suffering from a broken leg, and that he would be confined at the hospital for such length of time as would prevent his being able personally to attend the trial as a witness. The evidence given in the deposition of said witness, in all material points, corroborated the evidence of the motorman, and was in sharp conflict with the evidence given by appellees' witnesses. It is inferable from the bill of exception that appellees' attorney was earnestly contending that the facts in reference to the cause of the collision were as stated by the witnesses for appellees, and were not as stated by the witness in the deposition. In the course of argument the attorney used the language objected to, which is: "This man (the witness) isn't before the jury; you don't look him in the eye. You don't know whether he is a half-wit; you don't know whether he is a yellow man or black man, or what he is; you don't know whether he suffered from the hands of the claim agent."

The deposition did not state specifically either the nationality or the race of the witness. The argument does not specifically deny the witness was a white man, nor charge that he was a "yellow" man or "black" man, but merely states the fact that the record did not disclose what the witness' color was. It was in evidence that Mrs. Garner made a statement to appellant's claim agent, while she was at the hospital and in a somewhat hysterical condition, which was afterwards committed to writing and a copy given to her, but that she refused to sign it because she claimed it did not correctly represent what she had told the claim agent. The last sentence of the argument is doubtless based on this evidence of Mrs. Garner. To our minds, the jury could not have been influenced by this argument, even if improper. The facts in reference to the witness were before the jury, and they could draw their conclusion, and doubtless did so, both as to the complexion of the witness and as to his mentality.

We have carefully examined all other assignments of error, with the result that we are of opinion that the case should be affirmed, and it is so ordered.

Affirmed.

On Motion for Rehearing.

In its motion for rehearing, appellant contends that the evidence of the jurors Broyles, Gano, and Woodward, the latter being the foreman, shows conclusively that the jury was guilty of misconduct. These were the only jurors who testified. Broyles' testimony clearly shows that there was no agreement before the quotient was determined to make it the verdict. The effect of the witness Gano's testimony is very much the same on this question, but this juror apparently believed the quotient should constitute the verdict. Woodward testified that: "It was my understanding that the court had told us if we couldn't get together otherwise, then to take a ballot, by lot. I told the gentlemen of the jury that as the court had instructed us to do that, that I thought we all ought to put down what we thought was right, add it up and divide by twelve; I told them I thought that was the only way we could get it. * * * Each juror put down an amount and I divided by twelve, and I put to a vote the amount I got. We did not write down the vote. I just asked them orally, 'Gentlemen, is this amount alright,' and nobody objected."

Again the witness testified: "Now, judge that agreement (statement) as it reads there,

looks like we had agreed on a verdict. We hadn't agreed on this amount—that we would accept it. We agreed that it looked like that was the only way we could get together and find out how much we could give. We couldn't give them on the other—that is the only way we could find out—we could get at it. We voted on it after we had arrived at this amount and that is all."

On redirect examination the witness further testified: "I told you when I talked to you that we did not have an agreement in advance of writing down and adding up and dividing by twelve. This statement (referring to a statement the witness had signed) is not correct when it says that we made an agreement for each to write down the amount of money he thought was proper, divide that by twelve, and that that would be the verdict of the jury. That is not correct. We didn't agree to stand by that decision. We agreed that was one way we could try to arrive at a decision."

This evidence we held in the original opinion to be sufficient to show that a reasonable inference could be drawn from the testimony of the jurors, to the effect that there was no agreement before the quotient was determined that such quotient should be the verdict, and hence the finding of the trial court that there was no misconduct of the jury is sustained by the evidence. We adhere to that opinion, and overrule the motion for rehearing.

Overruled.