**TEXAS EMPLOYERS' INS. ASS'N v. FORD et al.**

**No. 13327.**

Court of Civil Appeals of Texas. Fort Worth.

Feb. 28, 1936.

Rehearing Denied April 24, 1936.

Lawther, Cox & Cramer and Shelby S. Cox, all of Dallas, for appellant.

Jack Life, of Athens, and George Clark, of Waco, for appellees.

DUNKLIN, Chief Justice.

This case involves the provisions of the Workmen's Compensation Law of this state (Vernon's Ann.Civ.St. art. 8306 et seq.), and the Texas Employers' Insurance Association has prosecuted this appeal from an adverse judgment against it in favor of appellees, the widow and children of Gano E. Ford, deceased, for $4,260.50, payable in a lump sum.

Gano E. Ford was an employee of the Texas Power & Light Company, working in the fuel department of its Trinidad Plant. That company was a subscriber under the Workmen's Compensation Law and carried insurance issued by the appellant. Ford's employer furnished bathrooms provided with shower baths for the convenience of the employees. There were several of these shower bath stalls, about 4 x 4 feet in size, with concrete floors and slate walls. At the close of his day's work, Ford entered into one of these stalls for the purpose of changing his clothes and taking a shower bath. The water was luke warm. About the same time, Fred Dillard, another employee, entered an ajoining stall for the purpose of taking a bath. While in there he heard Ford turn on the water in his stall, and about two seconds later he heard a noise in Ford's stall which sounded like Ford had either bumped against the wall or fallen to the floor, and immediately Dillard went to Ford's stall to see what, if anything, had happened to him. He found Ford unconscious, lying on his back with his head and shoulders against one corner of the stall and his feet in the opposite corner. On account of the short space in the stall, there was not room for Ford to straighten out and his knees and feet were bent upward. He heard no outcry from Ford or any gasp or sound other than that made by the fall. He and a Mr. Floyd Anderson pulled Ford out of the stall and laid him out in the runway in front. In response to an emergency call, Dr. P. T. Killman arrived on the scene within about eight minutes thereafter. He made an examination of Ford's eyes, mouth, ears, and body and used a stethoscope to examine his heart; he detected a few weak distant-like heart beats. The deceased died in about one hour thereafter, without recovering consciousness.

In plaintiffs' petition it was alleged that on or about the first of January, 1934, the deceased suffered an attack of influenza or grippe or severe cold, as the result of which he was confined to his bed for approximately seven or eight days, and his illness left him in a weakened condition; and that on the afternoon of February 1, 1934, while acting in the course of his employment, he went into one of the shower baths furnished by his employers to take a bath, and, after removing his clothing, turned on the water in the shower; that in some manner he lost his footing and was caused to fall, his body and head

striking the slate wall and cement floor of the stall with great force and the injuries resulting therefrom directly caused his immediate death. Or, in the alternative, that his death resulted from the effect of the injuries he sustained on the neck and body, combined with the illness he had theretofore suffered. The truth of those allegations were put in issue by the defendant's general denial.

Following are special issues submitted, with the jury's findings thereon:

"1. Do you find from a preponderance of the evidence that the deceased Gano E. Ford fell in the bath room at the Trinidad Plant on February 1, 1934? Answer: Yes.

"2. Do you find from a preponderance of the evidence that the deceased, Gano E. Ford, sustained an injury on the 1st day of February, 1934, when he fell at the Trinidad Plant? Answer: Yes.

"3. Do you find from a preponderance of the evidence that such injury, if any, was sustained by the deceased, Gano E. Ford, in the course of his employment with the Texas Power and Light Company? Answer: Yes.

"4. Do you find from a preponderance of the evidence that such injury, if any, was a direct cause of the death of Gano E. Ford? Answer: No.

"5. Do you find from a preponderance of the evidence that manifest hardship and injustice will result to the plaintiffs unless the defendant company is required to redeem its liability, if any, herein by the payment of a lump sum? Answer: Yes.

"6. Do you find from a preponderance of the evidence that the death of Gano E. Ford was caused directly by the combined effect, if any, of the injury, if any, sustained on February 1, 1934, and the pre-existing effects of influenza? Answer: Yes.

"7. Do you find from a preponderance of the evidence that the death of Gano E. Ford was not solely caused by disease? Answer: It was not solely caused by disease."

Following is special issue No. 2, requested by defendant:

"Do you find from a preponderance of the evidence that such fall, if any, was not caused by his heart condition, if he did have an abnormal heart condition? Answer: It was not caused by his heart condition."

The evidence was sufficient to show that the baths were supplied by the Texas Power & Light Company to enable its employees to take needed baths after finishing a day's work, and on the occasion of his death the deceased was in the act of taking a bath immediately after finishing his work for the day. If the deceased sustained the injury alleged in plaintiffs' petition, such evidence was sufficient to support the finding that it occurred in the course of his employment within the meaning of the Texas Workmen's Compensation Law. Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S.W. 76; Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, 46 A. L.R. 1137.

In section 1 of article 8309, of the Workmen's Compensation Law, the following definition is given: "The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

Section 8, of article 8306 of the statutes reads: "If death should result from the injury the association hereinafter created shall pay the legal beneficiaries of the deceased employee a weekly payment equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 per week, for a period of three hundred and sixty weeks from the date of the injury."

Compensation was sought and awarded under that provision.

In appellant's brief the following is said: "The only issue before the trial court was whether the deceased sustained the injury in the course of employment and whether such injury, if any, resulted in his death."

■ The following announcement in the opinion of the Commission of Appeals in the case of Texas Employers' Insurance Ass'n v. Parr, 30 S.W.(2d) 305, 308, is well supported by many other authorities: "If the employment, in which the employee was engaged at the time the injury was inflicted, was the direct producing cause of such injury, the law allows compensation, notwithstanding the fact may be that, at the time the employee received the injury, he was suffering from age or disease to such an extent as had the effect to materially impair his capacity to perform for his employer as much labor as a young and healthy man could perform. If the condition of Parr, at the time he received the injury, was the result of disease, and that the injury, which he had received, was not the direct producing cause of the injury, then in such case Parr would not be entitled to recover anything, for the reason that his condition was not the result of any injury, but was the result of disease. Upon the other hand, even though Parr was diseased to such an extent as to impair his capacity to perform labor to the extent of 25 per cent., yet if, in the course of his employment, he received an injury, which totally and permanently disabled him, the fact that he was partially incapacitated from disease would not prevent him from recovering compensation for the full amount, which, under the law, he was entitled to receive without reference to the disease. An injury may be caused by an accident, although no injury would have been suffered but for the existence of disease, which was aggravated by the accident, but it is the accident resulting in an injury, for which the law gives compensation, measured, of course, by the average weekly wage of the injured employee."

■ We conclude that the verdict of the jury, construed as a whole, indicates a finding that the immediate cause of the death of the deceased was an injury sustained in the course of his employment, but that at the time of his injury he was suffering from the effects of influenza, which was a contributing cause of his death. And under the authorities cited, it cannot be said that the jury failed to find that the death of deceased resulted from an injury sustained in the course of his employment, or that the findings on that issue are in irreconcilable conflict, as insisted by appellant.

■ But appellant further insists that plaintiffs failed to discharge their burden of proof to show that the deceased came to his death as the result of any injury sustained by him when he fell in the bathroom. That plaintiffs had that burden is well established by the authorities cited. Ætna Life Insurance Co. v. Burnett (Tex. Com.App.) 283 S.W. 783; Hebert v. New Amsterdam Casualty Co. (Tex.Com.App.) 1 S.W.(2d) 608; McDowell v. Security Union Insurance Co. (Tex.Civ.App.) 10 S.W.(2d) 782; Southern Casualty Co. v. Flores (Tex.Com.App.) 1 S.W.(2d) 260; Travelers' Insurance Co. v. Peters (Tex.

Com.App.) 14 S.W.(2d) 1007; Associated Indemnity Corporation v. Wilson (Tex. Civ.App.) 41 S.W.(2d) 143.

No autopsy was made of the deceased and no proof was made of any external evidence of injury to his head or neck. To the contrary, Dr. Killman, who made a thorough examination of him immediately after his fall, testified he found no evidence of such an injury, and the testimony of others, who reached him after his fall, was of like effect. The only evidence tending to show any specific injury to his body as the result of his fall was the testimony of Dillard and Dr. Killman, who stated there was a slight scratch about two inches long on the back of his shoulder that was not bleeding, and with nothing to show whether or not it was a fresh wound. Mrs. Allie Lee Ford, wife of the deceased and a plaintiff in the case, testified that deceased had been ill and confined to his bed six or seven days with cough and cold and fever, not very high, but no physician had been called to treat him, and during that illness he had complained of pain in his chest, but had improved some when he went back to work, a few days before his death, although he had not fully recovered and was weak and had complained of weakness all along. But according to her further testimony, which was corroborated by that of others who had worked with deceased, he had worked for several years prior thereto without losing time, was 44 years of age; and two witnesses working with the deceased testified that just before he went into the bathroom he was joking and laughing with them and appeared to be well. But according to the testimony of his coemployees, shortly before his death he had complained of pain in his chest and shortness of breath.

Dr. Killman further testified that in his opinion the deceased dropped dead with what physicians call coronary sclerosis, which is hardening of the muscles of the heart, basing his opinion upon faint intermittent heartbeats which he discovered by the use of a stethoscope and the administration of adrenalin and strychnine in order to bring about some heart action.

Dr. Maxfield, a witness for the plaintiffs, testified that he had never examined the deceased or been his physician, but testified as an expert. His testimony was predicated upon the testimony given by Dr. Killman as to the results disclosed by the use of the stethoscope and the administration of adrenalin and strychnine to produce heart action, and to a discovery of intermittent faint heartbeats; and according to his opinion such tests did not indicate that the deceased's death was the result of coronary sclerosis; and, further, that immediate death could not be caused from coronary sclerosis unless the blood stream was completely blocked, and further heart action could not be gotten by administering adrenalin or strychnine. He testified further, in answer to hypothetical questions based on a history of the case, that he knew of no condition other than a fracture or dislocation of the neck which would have resulted in the immediate death of Ford, but that a fracture or dislocation of the neck could not have been disclosed except by an X-ray examination or an autopsy. He further testified that it was possible for influenza or grippe to so weaken the heart or the blood vessels leading to it that a fall would more readily result in death than in a case of a person not so affected.

There was no finding by the jury that the injury mentioned in their verdict was to the head or neck of deceased, but in the light of the evidence, it must have been so intended, since it would be unreasonable to suppose that the injury referred to was the slight wound on the back of the shoulder, especially in the absence of any testimony to that effect. That finding could not be supported by a pyramiding of inferences, to wit: (1) That while in the room deceased lost his footing and fell, the evidence offered by plaintiffs to show such being that the floor was slippery from water or soap, or both; (2) that in falling he struck his head or neck against the wall of the room; (3) as a result of such concussion his head or neck was injured; and (4) such injury caused his death. Those inferences were incompetent as evidence to support the judgment. 17 Tex.Jur., § 57, p. 247.

The expert testimony of Dr. Maxfield, in answer to purely hypothetical questions, was not sufficient to constitute a preponderance of the evidence, as against the testimony pointed out above, of a direct and positive character, strongly tending to prove that the death of deceased was not caused by injury to his head or neck, as alleged in plaintiffs' petition.

■ And even though it be said that the testimony of Dr. Maxfield amounted to

more than a scintilla of proof, and notwithstanding the statute making the jury the exclusive judges of the weight to be given the evidence, yet it is also a well-settled rule of decisions that this court is vested with authority to reverse a judgment when it is apparent that the findings of the jury on which it is based are so contrary to the great weight of competent evidence as to indicate that they resulted from bias or prejudice in the minds of the jury.

In Wichita Valley Railway Co. v. Williams, 116 Tex. 253, 288 S.W. 425, 430, our Supreme Court said: "The Court of Civil Appeals could and should set aside any judgment establishing liability for any amount if it appears to that court that prejudice existed and influenced the jury at the time it made such findings. If a finding of facts establishing any liability were so much against the weight of the evidence as to indicate prejudice, clearly the Court of Civil Appeals could set such findings aside." See, also, 3 Tex.Jur., § 76, p. 1090, and § 769, p. 1097, and the many decisions there cited, announcing the same rule.

It is our conclusion that the judgment should be reversed for failure of the plaintiffs to prove by a preponderance of competent evidence that the death of Gano E. Ford resulted from the injury alleged in their petition, and that the cause should be remanded for another trial; and it is so ordered.