**HUEY & PHILP HARDWARE CO. v. McNEIL.**

No. 13646.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 17, 1937.

Rehearing Denied Jan. 14, 1938.

1206

James H. Walker, Alvin H. Lane, and Eckford & McMahon, all of Dallas, for appellant.

C. D. Crockett and Crane & Crane, all of Dallas, for appellee.

BROWN, Justice.

Appellee brought suit against appellant for damages occasioned by being struck by one of appellant's trucks while she was crossing a street in the city of Dallas (in the middle of the day) at a place that is shown to be not only not a prepared street crossing, at a regular intersection of two streets, but at a point where, confessedly, appellee was in the act of what is now generally known as "jaywalking"; and in her evidence, to excuse such use of the street, at a time when, by her own admissions, she walked between cars, then standing on the street, and was seeking to cross by avoiding all cars using the street when moving in each direction.

She thus attempted to cross over at a time when a number of cars were standing on the street, on the side from which she crossed, because of traffic congestion.

There is no allegation that the public had adopted such crossing and that crossing at such point had become established by custom and usage.

Appellee set forth almost every act of negligence on the part of the truck driver that could arise in such an accident, including the provisions of the law of the road and Dallas city ordinances, and she specially pleaded that she was not guilty of contributory negligence in any particular, but, in the alternative, if she were, that she should recover under the theory of discovered peril. Appropriate answer was made by appellant.

The case being tried to a jury, about forty special issues were submitted, and, on the answers returned, judgment was entered for appellee. Appellant's motion for a new trial being overruled, the cause was appealed to the Court of Civil Appeals for the Dallas District and was by the Supreme Court transferred to this court for review.

We find that appellant's brief contains 209 printed pages; 65 assignments of error and 34 propositions in explanation of the assignments of error.

It stands to reason that we cannot comment upon each separate assignment of error. To do so would necessitate an opinion

of unreasonable length and serve no useful purpose.

During the course of the trial it became apparent that appellee was attempting to cross the street at a place not dedicated to the use of pedestrians as a crossing, and, in excusing such action on her part, was permitted to testify, over appellant's objection, that such point at which she was attempting to cross the street was used by pedestrians for a crossing; and her witness Calhoun was permitted likewise, over proper objection, to testify that he had observed pedestrians crossing the street at such point.

There were no pleadings tendered setting up any such custom and usage, and the objection to the testimony on such ground is well taken.

The custom and usage here relied upon is not one that is universal and generally known. This is a special custom, and we hold that it must be pleaded if it is relied upon.

The further objection was made that the evidence of any such custom was inadmissible because the custom relied upon was created, if it actually exists, in violation of express law.

It was shown that the city of Dallas had in force an ordinance prohibiting such use of the street as was employed by appellee at the time and place.

The objection seems well taken and supported by the following authorities: Fort Worth Gas Co. v. Bragg, Tex.Civ.App., 297 S.W. 244, reversed on other grounds Montrief & Montrief v. Bragg, Tex.Com.App., 2 S.W.2d 276; Missouri Pac. Railway Co. v. Fagan, 72 Tex. 127, 9 S.W. 749, 2 L.R.A. 75, 13 Am.St.Rep. 776; Theo. Ollesheimer & Bro. v. Foley, 42 Tex.Civ.App. 252, 95 S.W. 688.

To further protect itself, appellant presented the trial court a special charge in which the jury was instructed not to consider the testimony tending to establish the custom relied upon. This was refused and due exception taken.

We believe this action was error, in the light of the pleadings and proof. Waul v. Hardie, 17 Tex. 553; San Antonio Traction Co. v. Higdon, 58 Tex.Civ.App. 83, 123 S.W. 732; Carmichael Co. v. Miller, Tex.Civ. App., 178 S.W. 976.

The record further discloses that appellee's counsel, in his argument, laid great stress before the jury on the fact that the testimony shows that appellee was using the street as other pedestrians usually do, and that therefore she was not negligent in such use.

This argument is the subject of an attack by appellant and is well taken.

Assignments of error are presented covering the fact that, in the face of the very admissions made by appellee on the witness stand, the jury found in answer to the issues submitted that appellee did not attempt to cross the street in the middle of the block, and that she was not walking across the street diagonally, and other matters we will not specify.

It is urged that these findings of the jury are unsupported by the evidence and contrary to the evidence, and disclose a manifest bias and prejudice on the part of the jury.

We believe the contentions are well founded, and under such authority as Wichita Valley R. Co. v. Williams, 116 Tex. 253, 288 S.W. 425, we should reverse the judgment.

Complaint is made of the manner in which counsel for appellee interrogated appellee relative to the making of a written statement by her, at the instance of a man named Wade.

Appellee's statement, reduced to writing and signed by her, had been introduced in evidence for the purpose of showing how she explained and detailed the events leading up to and the accident itself, before she brought suit.

Appellee's counsel asked a number of questions concerning the man who secured the statement from appellee. How old he was; whether he advised appellee as to his business; and whether or not he said he was a lawyer; and, having obtained answers, then these questions were asked: "Q. What business did he say he was in—don't tell who he was representing, but what was his general character of business?"

To which appellee answered: "He was accustomed to taking and getting information and getting statements."

"Q. Investigations? Answer: Yes."

"Q. Have you ever had any previous experience with investigators? Answer: No, sir."

"Q. Did you say anything to this adjuster in respect to those skinned places on your knees?"

At the proper time appellant not only objected to this manner of questioning the witness but moved for a mistrial because the questions elicited answers from the witness, and the questions themselves suggest before the jury that an insurance company was interested in the defense of the suit. The motion was denied.

As we view this record, unless an open bona fide attack was made on the statement secured from appellee, on the theory that it was obtained by or for appellant, there could be no point in propounding the questions as they were put. We have no desire to even insinuate that counsel wanted to inject the question of insurance into the case, in the presence of the jury, but what effect other than that could one reasonably expect from the questions propounded?

Counsel knew he was treading on dangerous ground. He must have been in possession of definite facts because he warned the witness not to tell the jury "who he was representing," but to tell "what was the general character" of this man's business.

To show the vice in the situation, in his closing speech, counsel made a vigorous argument in which he pictured the manner and the circumstances under which the statement was obtained and said that the man who so obtained it "was a trained investigator; you can't describe him any other way."

Had appellee shown that this man was in the employ of appellant and had the facts shown him to be a trained investigator, no error in such argument would have been shown. But, taking all the facts and the manner of questioning and couple them with this argument and we are driven to but one conclusion.

The questioning and the argument constituted error.

■ Complaint is made of other argument, from the lips of appellee's counsel, which were outside the record and tantamount to testimony on the part of counsel. We shall not quote therefrom, but we cannot approve the argument, and feel that such will not happen on another trial.

■ Any appeal to the sympathy of the jury, or any appeal to prejudice, that is not based upon the lawful record made, and is not a fair comment on the facts, or deduction therefrom, must be condemned.

■ Appellant requested several issues, predicated upon acts of appellee testified to by appellee and by other witnesses, raising affirmative defenses, and these were refused by the trial court.

Every defendant enjoys the right to have every affirmative defense (that is properly raised by the evidence) submitted without qualification.

■ The trial court excluded the testimony given by appellee at a former hearing, which tended to show that her explanation of what happened and how the accident occurred was different from her testimony at the present trial.

Clearly such evidence is admissible.

■ The evidence having shown that appellee had some defect in her vision before she suffered the injuries for which she sues, it was error for the trial court to refuse appellant's requested instruction to the jury not to allow appellee for any such disability that was not the result of the accident, and to allow for only such disability as was the result of an aggravation of her then condition.

For the reasons given, the judgment of the trial court is reversed and the cause remanded.