## FIREMAN'S FUND INS. CO. OF SAN FRANCISCO, CAL., v. HONNOLL.

### No. 2074.

Court of Civil Appeals of Texas. Waco.

March 2, 1939.

Rehearing Denied May 18, 1939.

Harris, Howell & Gordon, of Waco, for appellant.

Kyle Vick, of Waco, for appellee.

GEORGE, Justice.

This suit was instituted by J. R. Honnoll against Fireman's Fund Insurance Company of San Francisco, California, to recover the sum of $1500. Honnoll alleged that the insurance company, on or about the 21st of July, 1933, issued to him its policy in the sum of $1500, insuring the dwelling house located on his farm four and one-half miles southeast of Eddy in Falls county, up to noon, July 21, 1936; that a few days before July 21, 1936, he entered into a parol contract with W. F. Hill, agent for the insurance company, to renew said policy for a period of three years from July 21, 1936; that thereafter, on or about the 12th of September, 1936, said dwelling was completely destroyed by fire. The trial court rendered judgment for Honnoll upon the jury's findings (1) that shortly prior to July 21, 1936, W. F. Hill agreed with J. R. Honnoll that he would renew his fire insurance policy in consideration of Honnoll paying the premium in a few weeks; (2) that W. F. Hill had actual authority to make a parol agreement for the renewal of the policy; (3) that Hill was acting within the apparent scope of his authority when he made said agreement; and (4) that the fire was not caused by any of the enumerated exceptions contained in said policy.

Appellant says that the findings of the jury are so contrary to the overwhelming weight of the testimony as to indicate that they were the result of bias or prejudice and that they are manifestly wrong. This assignment is sustained.

Mr. Honnoll testified that he first took out insurance with the company in 1923, and carried it until about the first of 1933, when he let it lapse for a period of six or seven months; that he took out, on July 21, 1933, the policy that extended to noon July 21, 1936; that he, eight or ten days before July 21, 1936, received a lettter from Mr. W. F. Hill of Eddy, asking him to come down and renew the policy; that he went to see Mr. Hill to renew his policy three or four days before July 21st, and they had the following conversation in Mr. Hill's office: "Well, I told Mr. Hill I had come down to see about renewing the policy. I said, 'I haven't got the money to pay the insurance, to pay you cash', and he said—I asked him if he could wait on me something like four, five or six weeks, maybe eight weeks, until cotton began to come in—this was about the first of August and it would take a few weeks, something like a month and a half till cotton picking time from then, no definite time. He asked me then if I would give him a note. I said, 'Mr. Hill, it is just a short time until cotton picking time so I don't care to give a note—just a

short time and cotton will be coming in.' So then he said, 'Well, if you can't give me a note,' he said, 'Well, I guess I can take care of it for you the way I have been doing.' The same thing, same rule; he said he would take care of it for me. At that time it was just about twelve o'clock and I was on my way to the farm and he says, 'Well, I will tend to it this afternoon,' something like that—'you can just go ahead,' and that was all there was, and I supposed he did it—that is all there was to it." He further testified that the building was totally destroyed by fire between one and two o'clock A. M. Saturday, September 12, 1936; that he went to Eddy on that Saturday morning after he heard of the fire but that he did not go to see Mr. Hill until Tuesday, at which time he told Mr. Hill he had come to see about his insurance and Mr. Hill informed him that he did not have any insurance; that he didn't known just what he should say; that he asked Mr. Hill for the old policy and Mr. Hill told him that he did not have it, that he had destroyed it; that he did not ask for any blanks on which to file proof of claim for loss; that the property was in the same condition and situation that it was in when the policy was issued in 1933; that his oldest son, Cleo, lived in the house; that he did not tell Messrs. J. E. Carter, A. F. Adcock, A. E. Battle, J. S. Casbun and E. P. Johnson that he had let his insurance policy expire and that he did not have any insurance; that he told them Mr. Hill said he did not have any insurance.

Mr. Hill testified that he, some ten or fifteen days before expiration of the policy, wrote Mr. Honnoll notifying him of the expiration of his policy; that he wanted to renew it for him and for Mr. Honnoll to come to his office; that Mr. Honnoll never came to his office; that about a week after that time he and Mr. Beard saw Mr. Honnoll and that he went out and contacted him right at the front of the First National Bank and they had the following conversation: "I spoke to him, I says, 'Mr. Honnoll, did you get my notification card or letter?' he said, 'Yes, I got it.' I said, 'Well, I want to renew your policy, keep your policy in force and keep your property protected.' He says, 'Well, I just can't do it now; I haven't got the money.' I says, 'Mr. Honnoll, that makes no difference. If you want to keep your property protected, I will take care of you and you can pay me in the fall.' He says, 'No, this is July; I don't know what the crop will do and I don't know whether I can pay you this fall or not. I will just have to go without the policy,' and that is the absolute fact. I says, 'All right, Mr. Honnoll, if that is the way you feel about it, but remember I am here in the insurance business and when you do want that property protected I will put it on any day,' and he said, 'all right.' * * * Mr. Honnoll came to me, as I recall it, the latter part of the next week after the fire, about a week after the fire and he says, 'I want to come in to see you if there is not some way I can get insurance out of this policy.' I says, 'Mr. Honnoll, I don't see that there is, I am just sorry for you, but you don't have any insurance, and I just don't feel like there is any way you could get any because it was out.' Well, he said he carried it a long time and felt like he ought to have some any way and that he intended to renew it. I says, 'Well, I can't go by what you intended to do but as a matter of fact, you didn't,' and I said, 'I am sure the insurance company would not recognize any claim under the circumstances because your policy was out, you knew it was out and I notified you and you just didn't have it.' Well, he wanted to know if there wasn't some thirty or sixty days of grace in the payment of the premium, and wanted to know if there wasn't the same provision about fire insurance policies as life insurance. I says, 'No, Mr. Honnoll, a fire insurance policy reads from 12 o'clock noon of a certain day to 12 o'clock noon of another date only, or three years from that time and you pay for that period of time only and there is no such thing as days of grace in fire insurance.' * * * Well, he said he just felt like he ought to have something out of it and that the agency at McGregor told him I ought to have renewed that insurance anyway. I says, 'Mr. Honnoll, if I had been the owner of the house and you the insurance agent and you wanted me to renew and I would not let you, would you go ahead and issue it anyway?' Well, he said he didn't know; he felt like he ought to have it anyway." Mr. Hill further testified that Mr. Honnoll had always theretofore paid the premium within a few days after the policy was issued; that there was nothing said about how long he would be willing to carry it; that nothing was said about insurance terms or note.

Mr. B. O. Beard testified that he saw Mr. Hill and Mr. Honnoll in conversation

on the streets of Eddy near the First National Bank; that he heard a part of the conversation between Mr. Hill and Mr. Honnoll after the fire; that Mr. Honnoll asked Mr. Hill something about days of grace—if they didn't have thirty or sixty days of grace on an insurance policy—and Mr. Hill told him no. Mr. A. D. Adcock, groceryman, testified that Mr. Honnoll told him after the fire that he did not have any insurance; that it looked like he could not get where he was able to carry it and he had to drop it. Mr. J. E. Carter testified that Mr. Honnoll told him a few days after the fire that the insurance had lapsed. Mr. E. P. Johnson, manager of Bruce-Campbell Lumber Yard, testified that Mr. Honnoll, two or three days after the fire, told him he had had insurance but that he had dropped it; that Mr. Hill offered to carry it for him but that he told Mr. Hill to wait until he could get some money. Mr. A. E. Battle, carpenter, testified, that Mr. Honnoll, a few days after the fire, told him that his insurance had lapsed and that he did not know just what he was going to do about rebuilding.

The following letter was written to appellant by appellee's counsel on September 24, 1936, to-wit: "I write for information relative to a fire policy issued in July, 1933, to Mr. J. R. Honnoll, at about 4½ miles southeast of Eddy, Texas, in Falls county. This policy was taken out about July 22, 1933. Will you kindly furnish me with information relative to the number of this policy, the amount, and the termination, if any, and whether the same has been renewed and is still on your books."

■ This court is vested with the authority to and should set aside any judgment establishing liability for any amount if it appears to the court that the findings of the jury on which the judgment is based are so contrary to the great weight of competent evidence as to indicate that they resulted from bias or prejudice in the minds of the jury. Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S.W. 425, pars. 10 to 12, inclusive; Texas Employers' Ins. Ass'n v. Ford et al., Tex.Civ.App., 93 S.W.2d 227; Huey & Philp Hdwe. Co. v. McNeil, Tex.Civ.App., 111 S.W.2d 1205, par. 5; Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Pecos & N. T. Ry. Co. v. Welshimer, Tex.Civ.App., 170 S.W. 263, pars. 2 and 3; Patrick v. Smith, 90 Tex. 267, 38 S.W. 17; Sovereign Camp

W. O. W. v. Cooper, Tex.Civ.App., 208 S.W. 550.

■ The jury were the judges of the credibility of the witnesses Beard, Johnson, Adcock, Battle and Carter, but they had not the right to arbitrarily reject the testimony of these witnesses, against whom there were no discrediting facts or circumstances. All of these witnesses appeared to have been friendly to Mr. Honnoll and disinterested, and there is nothing in the record to show that they bore any relation to Mr. Hill or the appellant that would justify a suspicion against their truthfulness. It appears that the jury entirely disregarded the testimony of these witnesses and that appellant was not given that fair trial to which each litigant is entitled. Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788.

The judgment of the trial court is reversed and the cause remanded.